### COMMISSIONER OF INTERNAL REVENUE v. MURPHY.

#### No. 106.

Circuit Court of Appeals, Second Circuit.

May 21, 1934.

Pat Malloy, Asst. Atty. Gen., and Sewall Key and John G. Remey, Sp. Assts. to Atty. Gen. (E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., and C. A. Ray, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., of counsel), for petitioner.

Thomas F. Powers, of New York City (John J. Fox, of New York City, of counsel), for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

**SWAN, Circuit Judge.**

The respondent is an attorney at law engaged in general practice in New York City. In the year 1926 he received compensation from the state of New York for services in representing the state in a case pending before the American-British Arbitral Tribunal. He claims that such compensation was exempt from federal income tax, and the Board of Tax Appeals so held. The Commissioner seeks to reverse this ruling.

The principles which must govern our decision are expounded in Metcalf & Eddy v. Mitchell, 269 U. S. 514, 46 S. Ct. 172, 70 L. Ed. 384. If the respondent was an officer or employee of the state, his pay as such was immune from federal taxation; but, if he was merely employed as legal counsel in a special case, the compensation paid for his services must be included in taxable income.

Lucas v. Reed, 281 U. S. 699, 50 S. Ct. 352, 74 L. Ed. 1125; Lucas v. Howard, 280 U. S. 526, 50 S. Ct. 87, 74 L. Ed. 593. These principles are not disputed; the dispute relates to the application of them to the facts at bar.

On January 8, 1925, the Attorney General of the state of New York sent the respondent the following letter:

"You are hereby appointed a Special Deputy Attorney General for the purpose of representing the State of New York in all matters pertaining to the claim made by the Government of Great Britain in behalf of certain members of the Cayuga Nation of Indians in respect to certain alleged rights of said Cayuga Nation of Indians against the State of New York now pending before the American-British Arbitral Tribunal and to confer with the agent of the United States before that Tribunal as to the defense and proofs to be advanced in the answer to the memorial filed by the Government of Great Britain in support of the claim and to arrange with him for such further participation in the arbitral proceedings which may be for the interest of the State of New York or for the mutual interest of the United States and the State of New York, and to perform all such other duties in connection with said matter as may be proper and appropriate for the attorney therein for the State of New York, and for those purposes only.

"This appointment is to take effect January 8, 1925."

On January 28, 1925, he took an oath of office as special deputy attorney general, which was filed with the Secretary of State of New York. During 1925 and 1926 the respondent, assisted by members of the staff of his law office, spent a considerable amount of time on the Cayuga Indian Case. After decision of the case by the Arbitral Tribunal in 1926, he was paid $7,000 by the state of New York. This was but a small fraction of his professional earnings during the years 1925 and 1926.

The respondent contends that he was appointed under section 61 of the Executive Law (Consol. Laws N. Y. c. 18 [Laws 1919, c. 165]), which authorizes the Attorney General to "appoint such deputies as he may deem necessary and fix their compensation, within amounts appropriated therefor by the legislature"; while the Commissioner contends that the appointment was made under section 65 (Consol. Laws N. Y. c. 18), which

authorizes the Attorney General to "designate and employ such additional attorneys or counsel as may be necessary to assist in the transaction of any of the legal business mentioned in section sixty-two of this chapter," and provides for payment to them of "a reasonable fee." It seems probable that the deputies whose appointment is authorized by section 61 are the regular members of the staff of the Attorney General who succeed in prescribed order to his statutory duties in the event of his death. See section 9, Public Officers Law (Consol. Laws N. Y. c. 47). But, however this may be, the present record does not enable us to determine under which section the Attorney General purported to act. Cf. People ex rel. Osborne v. Board of Supervisors, 168 App. Div. 765, 154 N. Y. S. 266. It does not disclose how or when the amount of the respondent's compensation was fixed, nor whether it was paid out of the appropriation referred to in section 61 or from the source mentioned in section 65. The respondent's testimony refers to his compensation as "salary," but this is scarcely significant. He argues that the amount paid him would not be "a reasonable fee" for the work done, but that implies there was no agreement in advance, as to which we know nothing. Nor can much importance be attached to his title; he secured the same designation, without salary, for a clerk in his own law office who was assisting him in the case. In Metcalf & Eddy v. Mitchell, 269 U. S. 514, 520, 46 S. Ct. 172, 173, 70 L. Ed. 384, the tests relied upon as indicating that the engineers, whose status was there involved, were not public officers, were stated as follows:

"They took no oath of office; they were free to accept any other concurrent employment; none of their engagements was for work of a permanent or continuous character. * * * Their duties were prescribed by their contracts and it does not appear to what extent, if at all, they were defined or prescribed by statute."

The definition of article 88, Regulations 69, is to similar effect in specifying that the position must be one "the tenure of which is continuous and not temporary and the duties of which are established by law or regulations and not by agreement."

The respondent in the case at bar does not satisfy these tests. It is true that he took an oath of office, but this can scarcely be deemed conclusive, and particularly where, as here, it does not appear that he was required by

law to do so. See Dawson v. Knox, 231 App. Div. 490, 247 N. Y. S. 731. He had no position of permanent or continuous tenure, was free to carry on concurrently his general law practice, and was employed for a single litigation. His own office employees assisted him in the preparation and presentation of the case, just as in any ordinary piece of litigation. We can see no distinction between his employment and that of the attorney held not to be an officer in Lucas v. Reed, 281 U. S. 699, 50 S. Ct. 352, 74 L. Ed. 1125. The respondent does not claim to have been an "employee" of the state, and certainly is not within the definition of that word in article 88 of the Regulations.

For the foregoing reasons we think the Board erred in excluding the $7,000 fee from the respondent's income. The order is reversed, and the cause remanded.