## MALLORY v. WHITE.
### No. 5418.

District Court, D. of Massachusetts.
Nov. 9, 1934.

H. Murray Pakulski, Asst. Corp. Counsel, of Boston, Mass., for plaintiff.

Francis J. W. Ford, U. S. Atty., and J. Duke Smith, Sp. Asst. to U. S. Atty., both of Boston, Mass., for defendant.

McLELLAN, District Judge.

This action at law for the recovery of a tax alleged to have been illegally collected from the plaintiff, was heard on October 30, 1934, and was submitted for decision on a written stipulation of facts and upon briefs. The hearing having been adjourned until today, I dealt with the motions for judgment and requests for rulings as hereinafter appears.

The plaintiff is and was on the dates hereinafter named a citizen and resident of the city of Boston, Mass., and the defendant was

on the dates hereinafter named the duly appointed and acting United States collector of internal revenue for the district of Massachusetts. On or about March 15, 1930, plaintiff filed with the defendant his income tax return covering the taxable year 1929, showing a tax due in the sum of $2,415.07. As the result of investigation of the plaintiff's tax liability for 1929, an additional assessment was duly made by the Commissioner of Internal Revenue in November, 1931, in the sum of $923.33 tax and $94.50 interest, or a total of $1,017.63, which amount was demanded by the defendant and paid by the plaintiff under protest on December 17, 1931. On May 6, 1932, plaintiff filed two claims for refund with the Commissioner of Internal Revenue for the year 1929 for the respective sums of $1,017.63 and $765.66, on the grounds that the income to the plaintiff, on which the above amounts of tax were paid, was received as salary during the year 1929 from the city of Boston for services rendered as pathologist at the Boston City Hospital, which amount was claimed by the plaintiff as being exempt under the provisions of article 643, Regulations 74, that such salary was received by plaintiff as an employee of a political subdivision of said state, and that the Legislature of said state had authorized the city of Boston to conduct such hospital as a municipal institution. These claims were rejected by the Commissioner, and this action was seasonably filed thereafter.

During the year 1929 the plaintiff, in addition to the services rendered as pathologist at the Boston City Hospital, was employed by and received compensation in the amount of $7,040 as pathologist from Harvard University and United Fruit Company, which amount was reported by the plaintiff in his return for the year 1929.

The additional tax above mentioned was based upon the income received by the plaintiff for his services performed for and on behalf of the Boston City Hospital as pathologist in chief during the year 1929, which position is created by rule 97 of the Rules of the Boston City Hospital in the following language:

"Rule 97. *Administration of Department of Pathology.* The Pathologist-in-Chief shall have immediate charge of the Pathological Laboratory, and supervision of the details of its administration."

The hours during which the plaintiff rendered services to the hospital were week days from 9 a. m. to 5 p. m. and without additional compensation practically every Sunday for four hours, every holiday, and many evenings. The plaintiff has rendered services to the city of Boston since 1897, and was appointed to the position as pathologist in chief in 1906 by the trustees of the Boston City Hospital at a compensation of $5,500 per year, from which was deducted 4 per cent. for his pension under state law (chapter 521, Acts of 1922). The plaintiff has, since the beginning of this action, been compulsorily retired, having arrived at the age of 70 years. The plaintiff was required to sign the regular hospital pay roll sheet and was paid by the regular city paymaster. The city of Boston is a municipal corporation and therefore a political subdivision of the state.

During the year 1929, and while the plaintiff was engaged as pathologist in chief at the Boston City Hospital, the hospital was in charge of five trustees, appointed by the mayor. Only sick and injured persons who, by reason of poverty or accident, required temporary relief, except for good cause shown, were admitted to said hospital. Under certain circumstances and under the authority of the trustees, a limited number of pay patients were admitted, but never to the exclusion of free patients. During the year 1929 compensation for hospital services and treatment was collected by the hospital from private patients, such compensation so received being turned over to the city collector. The rates of board for the year 1929 were fixed by the trustees, persons nonresident or not settled in Boston during that year were admitted only as private pay patients; the total cost of operating the hospital for the year 1929 was in the sum of $2,364,269.44; and the income from private pay patients during that time amounted to $197,985.61, made up as follows:

| | | |
|---|---:|---|
| From the state | $ 26,250.00 | |
| From cities and towns | 16,171.16 | |
| From ward and private patients: | | |
|     Miscellaneous cases | 93,589.04 | |
|     X-ray cases | 10,331.00 | |
|     Physiotherapy cases | 9,145.45 | |
| From insurance cases: | | |
|     House cases | 9,268.18 | |
|     Out-patient cases | 2,382.00 | |
|     X-ray cases | 1,910.00 | |
|     Physiotherapy cases | 40.00 | |
| From contagious cases | 26,023.78 | |
| From record fees | 2,875.00 | (see letter 11/9/34 on |
| Total | $197,985.61 | file) |

The amounts of $26,250 received from the state and $16,171.16 received from cities and towns are derived from so-called "nonsettlement cases," i. e., persons who are taken sick or are injured while in the city of Boston, and by state law (sections 14 and 19, c. 117,

General Laws, Ter. Ed.) must be afforded medical treatment; reasonable charge for same being chargeable to the city or town of settlement, or, if the person is without settlement, then chargeable to the state (sections 18 and 19, c. 117, General Laws, Ter. Ed.).

The pertinent statutes, regulations and ordinances follow:

Revenue Act of 1928, c. 852, 45 Stat. 791:

"Sec. 21. *Net Income.* 'Net income' means the gross income computed under section 22 [section 2022], less the deductions allowed by section 23 [section 2023].

"Sec. 22. *Gross Income.* (a) General Definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever." 26 USCA §§ 2021, 2022 (a).

Regulations 74:

"Article 643. *Compensation of State officers and employees.*—Compensation paid to its officers and employees by a State or political subdivision thereof for services rendered in connection with the exercise of an essential governmental function of the State or political subdivision, including fees received by notaries public commissioned by States, is not taxable. Compensation received for services rendered to a State or political subdivision thereof is included in gross income unless (a) the person receives such compensation as an officer or employee of a state or political subdivision, and (b) the services are rendered in connection with the exercise of an essential governmental function. The commissions of receivers appointed by State courts are subject to tax for 1928 and subsequent taxable years.

"An officer is a person who occupies a position in the service of the State or political subdivision, the tenure of which is continuous and not temporary and the duties of which are established by law or regulations and not by agreement. An employee is one whose duties consist in the rendition of prescribed services and not the accomplishment of specific objects, and whose services are continuous, not occasional or temporary.
* * * "

Chapter 17 of the Revised Ordinances of the City of Boston of 1925:

"Section 1. The hospital department shall be under the charge of a board of five trustees, who shall have charge of the Boston city hospital and of the care and maintenance thereof; shall make all needful improvements in the lands and grounds connected with said hospital, shall have charge of all real estate held for purposes connected with the city hospital, and pay or cause to be paid to the city collector the income thereof.

"Section 2. The trustees shall admit to the city hospital only sick or injured persons requiring temporary relief, unless for good cause, and shall remove all sick or injured persons as soon as their condition will permit of such removal; they may allow persons making compensation therefor separate apartments and special accommodations, and the compensation so received shall be paid over to the city collector.

"Section 3. The trustees shall, in their annual report, include a statement of the condition of the hospital, the number of its inmates, the admissions thereto and discharges therefrom, and the births and deaths therein during the year."

Chapter 113, Acts of Massachusetts of 1858, authorizes the city of Boston to erect, establish, and maintain a hospital for the reception of persons who by misfortune or poverty may require relief during temporary sickness, and gives the city council power to make ordinances, rules, and regulations for the appointment of trustees and all other necessary officers, agents, and servants for managing the hospital.

Chapter 174, Acts of Massachusetts of 1880, requires, in substance, that the Boston City Hospital shall be maintained for the reception of persons who, by reason of poverty or misfortune, may require relief during temporary sickness, and that the board of trustees shall continue to be a corporation under the name of the Boston City Hospital.

Section 4. The members of said board shall meet for organization annually on the first Monday of May and choose one of their members as president. They may make rules and regulations not inconsistent with the provisions of law, relating to the city hospital, its officers and servants, and prescribe and enforce penalties for their violation; but such rules and regulations shall be subject to such limitations, restrictions and amendments as the city council may direct.

Section 5. The trustees shall, subject to the direction of the city council by ordinance

or otherwise, have the general care and control of the city hospital, and of all branches thereof, which have been, or may hereafter be, established, together with the buildings and rooms containing the same and the fixtures and furniture connected therewith, and of the expenditure of money appropriated therefor.

Section 6. The board may appoint a superintendent and such assistants and subordinate officers as they may deem necessary or expedient, may fix their compensation, and may remove them; but the amount expended shall not exceed the amount appropriated by the city council and the income of any moneys which may be lawfully appropriated from funds or property held by the trustees under the provisions of section two of this chapter.

Chapter 111, General Laws of Massachusetts (Ter. Ed.), requires the establishment and maintenance by municipalities of hospitals for the care of persons afflicted with diseases dangerous to the public health (section 92 et seq.).

It is clear that the nature of our constitutional system of dual sovereign governments is such as impliedly to prohibit the federal government from taxing the instrumentalities of a state government (Buffington, Collector, v. Day, 11 Wall. 113, 20 L. Ed. 122; Ambrosini v. United States, 187 U. S. 1, 23 S. Ct. 1, 47 L. Ed. 49; Flint v. Stone Tracy Company, 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Metcalf & Eddy v. Mitchell, 269 U. S. 514, 46 S. Ct. 172, 173, 70 L. Ed. 384), and in a similar manner to limit the power of the states to tax the instrumentalities of the federal government (McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579; Gillespie v. State of Oklahoma, 257 U. S. 501, 42 S. Ct. 171, 66 L. Ed. 338; Metcalf & Eddy v. Mitchell, supra).

It is agreed that the city of Boston is a municipal corporation and a political subdivision of the state. The first question, therefore, is whether the Boston City Hospital is an instrumentality of the City of Boston, within the meaning of the decisions.

The statutes require the maintenance by municipalities of hospitals such as the facts show the Boston City Hospital to be. See chapter 174, Acts of Massachusetts of 1880; chapter 111, General Laws of Massachusetts (Ter. Ed.). This hospital was established and is maintained "for the reception of persons who by misfortune or poverty may require relief during temporary sickness," and the total amount collected from nonsettlement

cases and paying patients during the year 1929 was only 4.1 per cent. of the expenses for that year. Providing hospital care for dependent poor and accidentally ill, the prevention and cure of contagious diseases, and the care of the public health are essential governmental functions as opposed to proprietary functions. The underlying test for determining if work being carried on by a municipality is governmental or proprietary is, as stated in Bolster v. City of Lawrence, 225 Mass. 387, at page 390, 114 N. E. 722, 724, L. R. A. 1917B, 1285, "whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit." In the same case it is said, "Although such institutions may receive pay patients their public character is not lost thereby. * * *" See, also, Benton v. Boston City Hospital, 140 Mass. 13, at page 17, 1 N. E. 836, 54 Am. Rep. 436, and Curran v. Boston, 151 Mass. 505, 24 N. E. 781, 8 L. R. A. 243, 21 Am. St. Rep. 465. In County of Essex v. Newburyport, 254 Mass. 232, at page 236, 150 N. E. 234, 236, the court said: "No argument is required to demonstrate that the establishment of the hospital * * * was a public purpose. * * * The hospital stands on as firm footing in this respect as do schools, roads, bridges, and other confessedly governmental functions. * * *" See, also, Flint v. Stone Tracy Company, 220 U. S. 107, at page 172, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Sacramento County v. Chambers, 33 Cal. App. 142, 164 P. 613; Cooley on Taxation, p. 204; Cumulative Bulletin XI-2, Internal Revenue Bureau, July-December 1932, p. 113, XI-38-5698, G. C. M. 10814.

The plaintiff's services having been rendered in connection with an essential governmental function, his salary, paid by the city, is exempt from taxation by the federal government if he was an officer or employee of the city of Boston. Regulations 74, art. 643; Burges v. Commissioner (C. C. A.) 69 F.(2d) 609.

The term "officer," as defined by article 643 of Regulations 74, is one "who occupies a position in the service of the State * * * the tenure of which is continuous and not temporary and the duties of which are established by law or regulations and not by agreement." This term was also defined in Metcalf & Eddy v. Mitchell, supra, in substance: "An office is a public station conferred by the appointment of government. The term embraces the idea of tenure, duration, emolument and duties fixed by law.

Where an office is created, the law usually fixes its incidents, including its term, its duties and its compensation. United States v. Hartwell, 6 Wall. 385, 18 L. Ed. 830; Hall v. Wisconsin, 103 U. S. 5, 26 L. Ed. 302. The term 'officer' is one inseparably connected with an office. * * * "

The plaintiff's services as pathologist in chief of the Boston City Hospital were not of a character to constitute him an officer of the city of Boston. It does not appear that his work was defined or prescribed by statute or that his duties were fixed by law.

The term "employee" is defined by Regulations 74, art. 643, as "one whose duties consist in the rendition of prescribed services and not the accomplishment of specific objects, and whose services are continuous, not occasional or temporary."

It is contended by the defendant that plaintiff was not an employee, according to this definition, but an independent contractor, not subject to control, whose income paid by the city is taxable by the federal government. This position seems to me untenable.

By statute, the trustees of the Boston City Hospital are given the right, among others, to make rules and regulations relating to the hospital, its officers and servants, subject to limitation, restriction, and amendment by the city council; to have general care and control of the hospital and of all branches thereof, and to appoint a superintendent and such assistants and subordinate officers as they deem necessary or expedient, fix their compensation, and remove them.

Rule 97 of the hospital provides that the pathologist in chief shall have immediate charge of the pathological laboratory and supervision of the details of its administration. This rule, defining the plaintiff's duties, certainly does not show that the general care and control of all branches of the hospital delegated to the trustees by statute did not extend to the department of which the plaintiff was the head. The trustee's right of control over the plaintiff, whether exercised or not, is entirely consistent with the relation of employer and employee within the meaning of the regulations and the decisions bearing upon this subject.

The plaintiff was always required to sign the regular pay roll sheet, was paid by the regular city paymaster, and 4 per cent. of his salary was deducted from his compensation to provide for his pension under the state law providing retirement allowance of city and county employees. He had regular hours at the hospital and gave extra time to this work without added compensation. His salary was on a yearly basis, and his term of service lasted from 1908 until he was compulsorily retired after this action was commenced. He did render services to others during the taxable year in question, for which he received compensation, but it does not appear that this was done during his regular working hours at the hospital or that it in any way interfered with his duties there.

The instant case is readily distinguishable from cases on which the defendant relies, such as Metcalf & Eddy v. Mitchell, supra, wherein the plaintiffs were consulting engineers retained to give advice, and Commissioner v. Murphy (C. C. A.) 70 F.(2d) 790, where the plaintiff was a practicing lawyer retained as a special deputy attorney general to conduct a single case, and where the claim was not that he was an "employee," but an "officer." In the case at bar, the plaintiff's calling, the nature of his work, the continuity of his services, his annual salary, the control to which he was subject, in connection with the other agreed facts, taken together and giving due weight to them all, indicate that he was an "employee" within the meaning of the pertinent regulations and decisions. Accordingly, such salary was exempt from federal taxation.

At a continued hearing, held to-day, I considered the requests for rulings and motions for judgment presented to me at the former hearing, and dealt with them as follows:

The plaintiff's motion for judgment was granted, subject to the defendant's exception.

The defendant's first request for a ruling that the plaintiff was not an officer was granted. Requests Nos. 2, 3, 4, and 5 were all denied for the reasons, among others, set forth in this opinion, and to the denial of these requests, the defendant's exception was duly saved.

The defendant's motion for judgment was denied, and the defendant's exception noted.

Judgment is to be entered for the plaintiff, in accordance with a stipulation by the parties that "if the court finds that the plaintiff's compensation in question is exempt from taxation, judgment may be ordered for the plaintiff in an amount to be agreed upon by the parties and if they cannot agree to be fixed by the court."