**NORCROSS v. HELVERING, Commissioner of Internal Revenue (two cases). KAPPLER v. SAME.**

**Nos. 6249–6251.**

United States Court of Appeals for the District of Columbia.

Argued Dec. 6, 1934.

Decided Feb. 4, 1935.

Walter E. Barton, of Washington, D. C., for petitioners.

Frank J. Wideman, Robert H. Jackson, Sewall Key, and A. F. Prescott, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

These appeals involve income taxes for the year 1929, in No. 6249 amounting to $772.93, in No. 6250 amounting to $772.93, and in No. 6251 amounting to $250, imposed under the Revenue Act of 1928 (26 USCA § 2001 et seq.).

It appears that, pursuant to an act of the Legislature of the state of Nevada (Laws Nev. 1927, c. 155), a written contract was entered into on April 8, 1927, between the state board of examiners and petitioner Charles J. Kappler, an attorney at law, whereby he agreed to represent the state in the prosecution of all claims which the state then held against the United States for money advanced or expended on account of the Civil War, Indian Wars, or uprisings within the state, Spanish American War, or other wars, for and on behalf of the government of the United States. The fee, contingent upon success, was to be 25 per cent. of all moneys recovered, less any expenses incurred by the state under the contract.

Kappler was permitted, at his own expense, to associate himself with other counsel. He accordingly brought into the case Frank H. Norcross, husband of petitioner Adeline Norcross. Through their efforts Congress passed an act March 4, 1929 (chapter 723, 45 Stat. 2378), appropriating $595,076.53 in full settlement for all advances, expenditures, and interest thereon by the state. On March 26, 1929, the state of Nevada paid to Kappler and Norcross $148,769.13. Of this fee Norcross received $50,000, and paid his law partner $7,000 for services in connection with the claim. Charles A. Norcross received $18,000, of which he paid $9,000 to his law partner. Kappler received $68,000. The remainder, $12,769.13, was held in trust by agreement of the petitioners.

The Commissioner held that the taxpayers were independent contractors, and that of the fee paid taxable income was received

by the various parties as follows: Frank H. Norcross, $21,500; Adeline Norcross, $21,500; Charles A. Norcross, $9,000; and Charles J. Kappler, $68,000. The decision of the Commissioner was affirmed by the Board.

Much of the indebtedness was incurred by the territory of Nevada prior to its admission as a state in assisting the United States government in raising troops, etc. This amounted in 1871 to about $380,000, and a 15-year bond issue for that amount, known as "territorial bonds," was authorized. In 1879 the state Legislature provided for the redemption of these "territorial bonds" by using trust funds derived from the sale of public lands granted to the state of Nevada by the national government for public school purposes.

It is urged by petitioners that they were agencies or instrumentalities through which the state exercised an essential governmental function and are therefore immune from federal taxation. It has, however, been generally held that income received for professional services by one not an officer or employee under a contract of the state is not exempt, since the effect on the state is incidental and remote. Metcalf & Eddy v. Mitchell, 269 U. S. 514, 46 S. Ct. 172, 70 L. Ed. 384; Lucas v. Howard, 280 U. S. 526, 50 S. Ct. 87, 74 L. Ed. 593; Lucas v. Reed, 281 U. S. 699, 50 S. Ct. 352, 74 L. Ed. 1125; Louisville Railroad Co. v. Wilson, 138 U. S. 501, 11 S. Ct. 405, 34 L. Ed. 1023; Commissioner v. Murphy (C. C. A.) 70 F.(2d) 790.

We think it clear that petitioners under their contract did not become officers or employees of the state in the sense that their compensation would, be exempt from federal taxation. As was said in Burnet v. McDonough (C. C. A.) 46 F.(2d) 944, 947: "The authorities clearly establish the doctrine that an individual rendering services to a state or a political subdivision thereof does not belong to the class of state agencies exempt from federal taxes, unless he has acquired the status of an officer or an employee."

It is contended that inasmuch as a portion of the money derived from the government was used by the state of Nevada to redeem the outstanding bonds and to reimburse the school fund, the contingent fees paid petitioners were paid from trust funds, and as such bring this case within the purview of the case of Gillespie v. Oklahoma, 257 U. S. 501, 42 S. Ct. 171, 66 L. Ed. 338; Coronado Oil & Gas Co. v. Burnet, 60 App.

D. C. 233, 50 F.(2d) 998, affirmed 285 U. S. 393, 52 S. Ct. 443, 76 L. Ed. 815.

We think this case is controlled by the decision of the court in Metcalf & Eddy v. Mitchell, supra. There the plaintiffs were consulting engineers employed to advise states or divisions of states with reference to water supply and sewage disposal systems. They claimed exemption from taxation on fees received during 1917 for services rendered, and which became part of their gross income, "on the ground that they were expressly exempted from the tax by the act itself, and on the further ground that Congress had no power under the Constitution to tax the income in question."

The court, distinguishing its decision in the Gillespie Case, which is chiefly relied upon by petitioners in this case, said: "Any taxation by one government of the salary of an officer of the other, or the public securities of the other, or an agency created and controlled by the other, exclusively to enable it to perform a governmental function (Gillespie v. Oklahoma, supra), is prohibited. But here the tax is imposed on the income of one who is neither an officer nor an employee of government and whose only relation to it is that of contract, under which there is an obligation to furnish service, for practical purposes not unlike a contract to sell and deliver a commodity. The tax is imposed without discrimination upon income whether derived from services rendered to the state or services rendered to private individuals. In such a situation it cannot be that the tax is imposed upon an agency of government in any technical sense, and the tax itself cannot be deemed to be an interference with government, or an impairment of the efficiency of its agencies in any substantial way."

In this case the relation was merely that of attorney and client, and the mere fact that the client happened to be the state instead of an individual does not change the situation, nor does the fact that the attorneys were paid from the fund derived from the government, and that a portion of the balance accruing to the state was applied to reimbursing the school fund alter the situation. The attorneys were merely hired by the state to render service in the collection of the fund from the government, and the service was not different than would be the case if instead of the state an individual had employed counsel to perform a similar service.

The decisions of the Board of Tax Appeals are affirmed.