**SAXE v. ANDERSON, Collector of Internal Revenue.**

District Court, S. D. New York.
March 26, 1937.

Williams & Saxe, of New York City (John Godfrey Saxe, of New York City, and Arthur H. Deibert, of Washington, D. C., of counsel), for plaintiff.

Lamar Hardy, U. S. Atty., of New York City (Edward J. Ennis, Asst. U. S. Atty., and David L. Marks, Sp. Asst. U. S. Atty., both of New York City, of counsel), for defendant.

KNOX, District Judge.

This is an action to recover certain items of federal income taxes which plaintiff paid to the federal government during the years 1924, 1925, and 1926. At various times during these years plaintiff was appointed by the Supreme Court of New York, and by the Surrogates' Court of New York County, to act as referee or special guardian in certain specific cases. He accepted such appointments, took the necessary oaths, performed the required services and received compensation for said services. Pursuant to the law of New York, such compensation was paid by the parties to the proceedings, or came out of funds under control of the court which utilized plaintiff's services. This compensation was included in the plaintiff's income tax returns as taxable income, and the tax thereon was duly paid. Within the appropriate statutory period,

plaintiff filed claims for refund of the taxes so paid, and the same were rejected. Thereupon, this action was instituted.

The contention is now advanced that, in acting as referee and special guardian, under appointment of the aforesaid courts, plaintiff was an officer or instrumentality of the state, and, therefore, immune from federal taxation under the Revenue Act of 1926, § 1211 (44 Stat. 130) ; under Treasury Regulation 69, article 88, and by virtue of the implied immunity arising out of the Constitution of the United States. Revenue Act of 1926, § 1211 provided : "Any taxes imposed by the Revenue Act of 1924 or prior revenue Acts upon any individual in respect of amounts received by him as compensation for personal services as an officer or employee of any State or political subdivision thereof (except to the extent that such compensation is paid by the United States Government directly or indirectly), shall, subject to the statutory period of limitations properly applicable thereto, be abated, credited, or refunded."

The Treasury Regulation defining the term "officer" follows : "An officer is a person who occupies a position in the service of the State or political sub-division, the tenure of which is continuous and not temporary and the duties of which are established by law or regulations and not by agreement."

Plaintiff's tenure of office not being continuous, he does not come within the department's definition. There remain the questions of whether he was an "officer" within the statute, or within the implied immunity granted by the Constitution. Since the problems presented by the two questions are identical, an answer to one will suffice for both.

The exemption arising from the Constitution is difficult to define. The existence of concurrent sovereignties within the same territorial limits has created many complex problems in every phase of government activity. Recent cases, which need not be cited, reflect novel attempts to delineate the shadowy borders more definitely. A necessary precipitate of the existence of conflicting sovereignties has been the doctrine that the instrumentalities of one government must not be burdened by the activities of the other without express permission of the Constitution. This theory of absolute immunity was fostered by the attitude of hostility between the states and the federal government which prevailed at the inception of our government. The immunity of instrumentalities of the federal government dates back to McCullough v. Maryland, 4 Wheat. 316, 431, 4 L.Ed. 579, where Chief Justice Marshall said : "That the power to tax involves the power to destroy ; that the power to destroy may defeat and render useless the power to create ; that there is a plain repugnance in conferring on one government a power to control the constitutional measures of another, which other, with respect to those very measures, is declared to be supreme over that which exerts the control, are propositions not to be denied."

Similar propositions were expressed subsequently when the United States attempted to tax an officer of a state. In Collector v. Day, 11 Wall. 113, 127, 20 L.Ed. 122, Mr. Justice Nelson said : "It is admitted that there is no express provision in the Constitution that prohibits the general government from taxing the means and instrumentalities of the States, nor is there any prohibiting the States from taxing the means and instrumentalities of that government. In both cases the exemption rests upon necessary implication, and is upheld by the great law of self-preservation ; as any government, whose means employed in conducting its operations, if subject to the control of another and distinct government, can exist only at the mercy of that government. * * * The means and instrumentalities employed for carrying on the operations of their governments, for preserving their existence, and fulfilling the high and responsible duties assigned to them in the Constitution, should be left free and unimpaired, should not be liable to be crippled, much less defeated by the taxing power of another government." The dissenting opinion of Mr. Justice Bradley in the case just cited was little less than prophetic as to the complications that would ensue from the doctrine proclaimed by the majority of his court. The cases to which attention will later be directed are quite illustrative of the difficulties that have ensued.

Nevertheless, the immunity of state instrumentalities has survived even the Sixteenth Amendment. Bowers v. Kerbaugh-Empire Company, 271 U.S. 170, 46 S.Ct. 449, 70 L.Ed. 886. See, also, Evans v. Gore, 253 U.S. 245, 248, 40 S.Ct. 550, 551, 64 L.Ed. 887, 11 A.L.R. 519.

Although the principle of immunity must be accepted, the last decade has witnessed some notable developments in its applica-

tion. A point of departure was Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 174, 70 L.Ed. 384, where Mr. Justice Stone said:

"In a broad sense, the taxing power of either government, even when exercised in a manner admittedly necessary and proper, unavoidably has some effect upon the other. The burden of federal taxation necessarily sets an economic limit to the practical operation of the taxing power of the states, and vice versa. Taxation by either the state or the federal government affects in some measure the cost of operation of the other.

"But neither government may destroy the other nor curtail in any substantial manner the exercise of its powers. Hence the limitation upon the taxing power of each, so far as it affects the other, must receive a practical construction which permits both to function with the minimum of interference each with the other; and that limitation cannot be so varied or extended as seriously to impair either the taxing power of the government imposing the tax (South Carolina v. United States, 199 U.S. 437, 461, 26 S.Ct. 110, 50 L.Ed. 261, 4 Ann.Cas. 737; Flint v. Stone Tracy Co., supra, at page 172 [of 220 U.S.] 31 S.Ct. 342 [55 L.Ed. 389, Ann.Cas.1912B, 1312]) or the appropriate exercise of the functions of the government affected by it. Railroad Co. v. Peniston, supra [18 Wall. 5], 31 [21 L.Ed. 787]."

Hence, questions of degree, avoided by Chief Justice Marshall as "so unfit for the judicial department," are now common judicial questions, see Willcuts v. Bunn, 282 U.S. 216, 51 S.Ct. 125, 75 L.Ed. 304, 71 A.L.R. 1260, as are inquiries into the true intent of a tax statute apart from its avowed purpose of raising revenue. See United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914; Bailey v. Drexel Furniture Co., 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817, 21 A.L.R. 1432.

Since Metcalf & Eddy v. Mitchell, supra, the tendency has been to narrow the bases of immunity. The tax is invalidly levied only if it be imposed on a government instrumentality, either directly or in such manner as to place a direct burden upon an essential governmental function. The mere statement of the proposition, however, lends no aid towards the solution of a specific problem. Its application to a particular state of facts requires the immediate interpretation of such words as "directly," "substantial," "essential," "governmental," "burden," and "remote." This is seldom easy, and hardly ever completely satisfactory or convincing.

Many cases deny exemption on the ground that "the subject of the tax is so remote from any governmental function as to render the effect of the exaction inconsiderable as respects the activities of the [particular governmental unit]." Burnet v. A. T. Jergins Trust, 288 U.S. 508, 516, 53 S. Ct. 439, 441, 77 L.Ed. 925. See, also, Willcutts v. Bunn, supra; Group No. 1 Oil Corp. v. Bass, 283 U.S. 279, 51 S.Ct. 432, 75 L.Ed. 1032; U. S. Trust Co. v. Anderson (C.C. A.) 65 F.(2d) 575, 89 A.L.R. 994; Metropolitan Bldg. Co. v. United States (Ct.Cl.) 12 F.Supp. 537; Marland v. United States (Ct.Cl.) 3 F.Supp. 611; Fullilove v. United States (C.C.A.) 71 F.(2d) 852; Buckley v. Commissioner (C.C.A.) 66 F.(2d) 394; Big Lake Oil Co. v. Heiner (D.C.) 2 F.Supp. 41; Wiltsie v. United States (Ct.Cl.) 3 F.Supp. 743; Compare Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 52 S.Ct. 443, 76 L.Ed. 815; Indian Motorcycle Company v. United States, 283 U.S. 570, 51 S.Ct. 601, 75 L. Ed. 1277.

Another ground for denying exemption is that the subject of the tax constitutes "a departure from usual governmental functions and to which, by reason of their nature, the federal taxing power would normally extend. The fact that the state has power to undertake such enterprises, and that they are undertaken for what the state conceives to be the public benefit, does not establish immunity." Helvering v. Powers, 293 U.S. 214, 225, 55 S.Ct. 171, 173, 79 L.Ed. 291 (salaries of trustees of municipally operated railway not exempt). See, also, State of South Carolina v. United States, 199 U.S. 437, 26 S.Ct. 110, 50 L.Ed. 261, 4 Ann.Cas. 737 (state operated liquor agencies not exempt); Ohio v. Helvering, 292 U.S. 360, 54 S.Ct. 725, 78 L.Ed. 1307 (same); Regents of University Georgia v. Page, 10 F.Supp. 901 (state university's athletic contests not exempt); Galveston v. United States (Ct.Cl.) 10 F.Supp. 810 (municipal wharf not exempt); Garden Homes v. Commissioner of Internal Revenue (C.C. A.) 64 F.(2d) 593 (housing corporation organized by state not exempt); Liggett & Myers Tobacco Co. v. United States (Ct.Cl.) 13 F.Supp. 143 (tax on tobacco used in state hospital not exempt), with which compare Mallory v. White (D.C.) 8 F.Supp. 989. Compare also Brush v. Helvering (U.S.) 57

S.Ct. 495, 81 L.Ed. —— (March 15, 1937, see 4 U.S.Law Week. 823) (salary of engineer of city water works exempt); Commissioner v. Lamb (C.C.A.) 82 F.(2d) 733 (salary of city park superintendent exempt); Commissioner v. Ten Eyck (C.C.A.) 76 F.(2d) 515 (salary of Commissioner of Albany Port Authority exempt); People ex rel. Rogers v. Graves, 299 U.S. 401, 57 S.Ct. 269, 81 L. Ed. 306 (salary of general counsel of Panama R. R. Co., wholly owned by the United States, exempt).

■■ In many cases, however, it is obvious that the governmental function is essential, and the agency "may be of such a character or so intimately connected with the exercise of a power or the performance of a duty by the one government, that any taxation of it by the other would be such a direct interference with the functions of government itself as to be plainly beyond the taxing power. It is on this principle that * * * any taxation by one government of the salary of an officer of the other * * * is prohibited." Metcalf & Eddy v. Mitchell, supra, 269 U.S. 514, at page 524, 46 S.Ct. 172, 174, 175, 70 L.Ed. 384. The question then becomes, as in the instant case, whether the taxpayer is an officer of the state, engaged in discharging an essential governmental function and, I think, whether the state is the source from which he receives compensation, together with other factors. A fundamental element of the doctrine is the protection of the government's funds which were raised by taxation. This is the explanation of Indian Motocycle Company v. United States, supra, and like cases. The problem being primarily factual, its solution will vary, first, with the many differing degrees of intimacy which may exist between the taxpayer and the state to which he renders service, and, secondly, with the weight to be attached to each factor in the relationship.

■ The use of referees in this state dates back to earliest colonial periods. In Steck v. C. F. & I. Co., 142 N.Y. 236, 37 N.E. 1, 25 L.R.A. 67, the court made the following statement:

"References of actions pending in the common-law courts for trial before referees were not known to the common law, and, so far as they are now authorized, they are particularly provided for by statutes. Under the Dutch rule in the colony of New York, actions involving long accounts could be referred to arbitrators or referees, and such a reference was a very common mode of trial during that period. But it was not pleasing to the English colonists, who had received the trial by jury from their ancestors,—a priceless heritage secured by Magna Charta,—and hence, some years after the capitulation of the Dutch to the English in 1683, by the charter of liberties and privileges granted by the Duke of York to the inhabitants of New York, it was provided 'that all trials shall be by the verdict of twelve men.' See Charter, append. No. 2, 2 Rev.Laws 1813. Thereafter, all actions in the common-law courts of the colony were triable before juries, except the action of account, and that was applicable only to a limited class of cases, involving the examination and taking of accounts. It was one of the most difficult, dilatory, and expensive actions known to the law, and was very rarely resorted to. McMurray v. Rawson, 3 Hill [N.Y.] 59; Magown v. Sinclair, 5 Daly [N.Y.] 63. The difficulties attending the prosecution of such an action were such that the practice became general for merchants and others having long accounts to enforce their collection by actions of assumpsit, which were always then triable by jury. But the embarrassments attending the trial of such actions by jury were such that December 31, 1768, an act (2 Van Schaick's Laws New York 517) was passed. * * *

"That was the first act in the colony of New York authorizing a reference in any common-law action. It was undoubtedly a tentative act, and it expired, by its own limitation, on the 1st day of January, 1771. It was revived and re-enacted by the act of February 16, 1771, and was to continue in force until February 1, 1780. It is evident that the people of this state parted with the trial by jury in any case with great hesitation and reluctance, as the temporary statute authorizing references was not re-enacted in 1780, and there was no such statute in this state from that date until 1788, when it was again substantially reinstated. It was in force prior to and at the time of, the adoption of the Constitution of 1777."

To say that the pressure of litigation on the courts has increased the necessity of references is a simple statement of the obvious. Resort to them is so common that they constitute an integral part of the judicial system. See Banking Law (Consol. Laws, c. 2), § 74; Condemnation Law (Consol.Laws, c. 73), §§ 11, 22; Debtor and Creditor Law (Consol.Laws, c. 12), §§ 15,

16, 21; General Business Law (Consol.Laws, c. 20), §§ 343, 356; General Corporation Law (Consol.Laws, c. 23), §§ 51, 112, 190; Insurance Law (Consol.Laws, c. 28), § 63; Judiciary Law (Consol.Laws, c. 30), § 251; Mental Hygiene Law (Consol.Laws, c. 27), § 72 (4); Penal Law (Consol.Laws, c. 40), §§ 373, 374, 376, 860; Real Property Law (Consol.Laws, c. 50), §§ 316, 343.

Plaintiff's first line of attack against the imposition of a federal tax upon his fees is to say that in view of the foregoing statutory provisions, there can be no question of fact as to whether he is an officer. To do him full justice, I quote an excerpt from his brief:

"The issue, in each case, is one of application of settled federal law to the facts of that case. State law is part of this factual situation.

"Cases having to do with application may be divided broadly into two classes:

"Class 1 consists of those cases where the answer to the question of application is to be found in limine by reference to the State's statutes which create the office, or even to the Constitution of the State, as here.

"Class 2 consists of a much larger group of cases and contains those cases which perplex the Government and the Courts in deciding the question of application. In those cases, the answer to the question of application is not to be found in the statutes of the State. Of necessity, resort must be to analyses of functions, duties and powers, and to definitions. Does he do this? Does he do that? By whom is he appointed? How is he paid? Does he take oath of office?, etc., etc."

"The case of the present taxpayer falls well within Class 1. The answer to the question of application can be decided by reference to Constitution and statute before the Government reaches the problem presented by Class 2 cases. Resort to incidental questions or definitions which is indispensable as to cases in Class 2, is wholly beside the point in respect to Class 1 cases."

■ However, in none of the cases where exemption was granted was any extraordinary consideration given to the fact that a statute provided for the taxpayer's appointment. See Halsey v. Helvering, 64 App.D.C. 103, 75 F.(2d) 234; Burnet v. Livezey (C.C.A.) 48 F.(2d) 159; Mallory v. White (D.C.) 8 F.Supp. 989; Commissioner v. Ogden (C.C.A.) 62 F.(2d) 334; Commissioner v. Harlan (C.C.A.) 80 F.(2d) 660. And in the following cases exemption was denied although the taxpayer's position was created by statute. Lucas, Commissioner, v. Reed, 281 U.S. 699, 50 S.Ct. 352, 74 L. Ed. 1125; Watson v. Commissioner (C.C. A.) 81 F.(2d) 626; Commissioner v. Murphy (C.C.A.) 70 F.(2d) 790; Norcross v. Helvering, 64 App.D.C. 160, 75 F.(2d) 679; Buckner v. Commissioner (C.C.A.) 77 F. (2d) 297. Thus, plaintiff's case falls within the second of the groups he sets up, and it becomes necessary to consider the other elements generally involved in these cases.

■ A referee is appointed by a court pursuant to statutory authority; he takes an oath of office which is waivable; he is compensated by the parties in the matters referred to him; his tenure is limited to the particular case; he is free to conduct his private practice simultaneously with his service as referee; he uses his own office and personnel; some of his duties are prescribed by law; he has no regular hours; he may make and enter an order and likewise his own judgment. Appeal from his judgment lies only to the appellate courts. The general powers that he may officially exercise are set forth in Civil Practice Act N.Y. § 469.

"§ 469. General powers of a referee. The trial, by a referee, of an issue of fact, must be brought on upon like notice and conducted in like manner as where the trial is by the court without a jury. The referee exercises, upon such a trial, the same powers as the court, to grant adjournments, to preserve order, and punish a violation thereof, or to subpœna a witness to attend before him and in a proper case to bring with him a book, document or other paper. Upon the trial of an issue of fact, the referee exercises also the same power as the court, to allow amendments to the summons or to the pleadings; to compel the attendance of a witness by attachment; and to punish a witness for a contempt of court, for nonattendance, or refusal to be sworn, or to testify. On a hearing before a referee or referees, the plaintiff may submit to a nonsuit or a dismissal of his complaint or may be nonsuited or his complaint may be dismissed, in like manner as upon a trial, at any time before the cause has been finally submitted for a decision. Where a final judgment upon the whole issue must be awarded in a referee's report, or where an undefended action for divorce or separation.

or to annul a marriage has been referred to an official referee, the referee may make a computation, or an assessment, or take an account, or proof of a fact, for the purpose of enabling him to award the proper judgment or enabling the court to carry it into effect; and he may ascertain and fix the damages, as a jury may do upon the execution of a writ of inquiry. The powers conferred by this section are exercised in like manner and upon like terms as similar powers are exercised by the court upon a trial." (Am'd. by L.1921, ch. 372; L.1924, ch. 159, in effect April 17, 1924.)

■ There is no doubt that a referee is a judicial officer of New York. The defendant, however, adverts to a distinction I drew in Fleming v. Bowers (D.C.) 11 F.(2d) 789, where I said· "Courts, of course, are an instrumentality of the sovereignty under which they function, but it does not follow that every person who is called upon by the court to aid in the performance of its duties thereby becomes an officer or employee of the sovereign that created the court. An attorney at law is rightfully said to be an officer of the·court in which he is duly admitted to practice. But he is not, for such reason, a governmental officer or employee. Nor does he become such if the court appoints him to act as a master to hear testimony and report to the court, or assigns him to defend an impecunious person charged with an offense against the government. In such appointments, as well as in the appointment of a receiver in a case such as that in which plaintiff acted, the court merely calls to its assistance, in the performance of its duties, a person who is considered competent to further the ends and purposes of the judicial establishment, and no change in the attorney's previous status, as respects the government, is brought about."

■ I believe that in the instant case, after weighing all the factors, and in the light of the distinction in Fleming v. Bowers, the plaintiff is not entitled to exemption. See, also, Matter of Hathaway, 71 N.Y. 238. The cases most favorable to him are Commissioner v. Ogden (C.C.A.) 62 F.(2d) 334, 335, and Cochrane v. Commissioner, 26 B.·T.A. 1167. Commissioner v. Ogden, was a case where an auditor had been appointed by a Massachusetts court pursuant to statute. The court, in declaring his income as auditor to be exempt from federal taxation, said: "An auditor under these statutes is much more than a person delegated by a court to assist it in the performance.of its duty. He is a judicial officer having important powers of a distinctly public character." In that case, however, the auditor's compensation came from the state. itself, whereas this plaintiff was paid by the litigants. It is true that the source of the compensation standing alone may not be a controlling factor; many governmental units still utilize officers whose compensation is derived from fees. However, the factor is of importance and goes to the heart of the basis of the exemption, viz., the burden imposed upon the sovereign. There is no evidence here that a tax on the compensation of referees will in any way burden the state.

As to Cochrane v. Commissioner, here again we have a distinguishing element which alone is not controlling, but which weighs against the plaintiff in this suit. In that case, the master in chancery was appointed for a definite term. Here the taxpayer's tenure and jurisdiction were limited to the case referred to him. Perhaps, if the plaintiff's tenure were definite or if his compensation came from the state, I should be disposed to conclude him to be an officer of the sovereign, but with this important factor absent, and in the presence of certain other elements, e. g., freedom to carry on other practice, I am satisfied that plaintiff is not entitled to recover. He has undoubtedly been an aid to any court he served, but he was not clothed with the robes of sovereignty within the implied immunity of the Constitution.

■ For purpose of the issue at bar, plaintiff's argument on special guardians is weaker than his argument on referees. A special guardian is appointed where certain unusual circumstances make inexpedient the use of a general guardian. See Surrogate's Court Act N.Y. § 64. Such circumstances, however, do not serve to change the status of a guardian from a court officer to that of a state officer. See New York Trust Company v. United States, 63 Ct. of Cl. 100; Todd v. Commissioner, 15 B.T.A. 962. See, also, Rules of Civil Practice N.Y. rules 39–44, making no distinction between a guardian ad litem and a special guardian. Notwithstanding plaintiff's demonstration of the heavy responsibilities of the position, I cannot see that a special guardian is other than an aide of the surrogate in specific instances. Nor are any particular qualifications prescribed to cope with the duties outlined

by plaintiff. See Matter of Van Wagonen's Will, 69 Hun, 365, 23 N.Y.S. 636. Complaint dismissed.