## CITY OF GALVESTON, TEX., v. UNITED STATES.
### No. 42543.

Court of Claims.
April 8, 1935.

Thomas W. Lain and Bryan F. Williams, both of Galveston, Tex., for plaintiff.

George H. Foster, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, WHALEY, WILLIAMS, and LITTLETON, Judges.

GREEN, Judge.

The plaintiff is a municipal corporation and during the period involved in this case was the owner of one-third of a water front property which by agreement was operated by the Galveston Wharf Company as a public wharf. During the years involved, namely, 1920, 1921, 1923, 1924, 1926, 1927, 1928, 1929, and 1930, the defendant assessed and collected from the wharf company income taxes on all of the profits resulting from the operation of the property. Beginning with the year 1924, part of the taxes so collected was refunded to plaintiff as will be more specifically stated hereinafter. Plaintiff now brings this suit claiming that it was entitled to have refunded one-third of all of the taxes so collected and that it should recover judgment for the difference between the amount paid and this one-third.

Without reciting the voluminous details set out in the findings, it is sufficient to say that after much controversy in the Legislature of Texas and more or less litigation in the courts between the wharf company and the plaintiff as to the rights of plaintiff in this property, the matter was settled by an agreement between the disputing parties which was approved by the Legislature of the state of Texas on April 15, 1905. Prior to this time the wharf company had issued to the city of Galveston 6,222 shares of its outstanding stock which totaled 26,266 shares. The agreement approved by the Legislature confirmed in the city an undivided one-third interest in the water front property and stated that such interest "shall be represented by said city's 6,222 shares of the stock"; and also that "said city shall be entitled to and shall receive dividends from the said Galveston Wharf Company in the same manner in which such dividends have heretofore been paid; that is, said city shall be entitled to and shall receive upon each of the 6,222 shares of stock the same amount of dividends as shall be paid by the said Galveston Wharf Company on any other share of stock."

Thereafter the wharf company continued to use the property in the conduct of the business as a wharfinger. The current earnings returned a profit and the wharf company has since that time paid to the city the same percentage of dividends as has been paid to other stockholders.

During all of the period involved in the case, taxes were duly assessed against the wharf company and paid by it on profits made in the operation of the property. For the years 1920, 1921, and 1923, the wharf company unsuccessfully took an appeal to the Board of Tax Appeals as to the amount which had been so assessed for these years. For the years prior to 1929, no deduction was taken or claimed by the wharf company because of the city's interest in the property. For 1929 and 1930, the wharf company claimed a deduction of one-third of its income "on account of the city's interest." The Commissioner disallowed the claim so made.

Plaintiff filed claims for refund for the years 1920, 1921, and 1923, which were denied by the Commissioner, and also filed claims for refund for the remaining years in controversy. In acting upon the claims beginning with the year 1924, the Commissioner paid to the city 6222/26266ths of the fourth installment for the year 1924 (holding that prior payments for 1924 were barred) and the same percentage of the subsequently paid deficiency for that year. The Commissioner also paid to the city the same percentage of the taxes paid by the wharf company for the years 1926 to 1930, inclusive.

The plaintiff claims that profits made through the use of its property were exempt from taxation under the Constitution and also under the federal statutes, that for this reason during all the period involved the government should have refunded to it one-third of the taxes paid by the wharf company on the property so operated, and that it is now entitled to recover the total amount thereof less any sums that were paid to it by the Commissioner. The defendant contends that the provisions of the law with reference to the recovery of taxes paid bar any action on the part of the plaintiff for the period prior to the time when the Commissioner commenced making refunds, and that no recovery can be had with reference to the remainder for the reason that the plaintiff is not a taxpayer. Defendant also claims that nothing is due plaintiff under the terms of section 213 (b) (7) of the Revenue Act of 1924, 26 USCA § 954 (b) (7), re-enacted in the Revenue Acts of 1926 and 1928, upon which plaintiff in part relies. Lastly, the defendant insists that under the facts in the case the law granted no exemption to plaintiff's share of the profits obtained from the operation of the wharf.

The Revenue Act of 1921 provided in section 213 (42 Stat. 237):

"Sec. 213. That for the purposes of this title (except as otherwise provided in section 233) the term 'gross income'—* * *

"(b) Does not include the following items, which shall be exempt from taxation under this title: * * *

"(7) Income derived from any public utility or the exercise of any essential governmental function 'and accruing to any State, Territory, or the District of Columbia, or any political subdivision of a State or Territory, or income accruing to the Government of any possession of the United States, or any political subdivision thereof.

"Whenever any State, Territory, or the District of Columbia, or any political subdivision of a State or Territory, prior to September 8, 1916, entered in good faith into a contract with any person, the object and purpose of which is to acquire, construct, operate, or maintain a public utility, no tax shall be levied under the provisions of this title upon the income derived from the operation of such public utility, so far as the payment thereof will impose a loss or burden upon such State, Territory, District of Columbia, or political subdivision; but this provision is not intended and shall not be construed to confer upon such person any financial gain or exemption or to relieve such person from the payment of a tax as provided for in this title upon the part or portion of such income to which such person is entitled under such contract."

The Revenue Act of 1924 provided in section 213:

"Sec. 213. For the purposes of this title [chapter], except as otherwise provided in section 233 [section 985]—* * *

"(b) The term 'gross income' does not include the following items, which shall be exempt from taxation under this title: * * *

"(7) Income derived from any public utility or the exercise of any essential governmental function and accruing to any State, Territory, or the District of Columbia, or any political subdivision of a State or Territory, or income accruing to the Government of any possession of the United States, or any political subdivision thereof.

"Whenever any State, Territory, or the District of Columbia, or any political sub-division of a State or Territory, prior to September 8, 1916, entered in good faith into a contract with any person, the object and purpose of which is to acquire, construct, operate, or maintain a public utility—

"(A) If by the terms of such contract the tax imposed by this title [chapter] is to be paid out of the proceeds from the operation of such public utility, prior to any division of such proceeds between the person and the State, Territory, political subdivision, or the District of Columbia, and if, but for the imposition of the tax imposed by this title [chapter], a part of such proceeds for the taxable year would accrue directly to or for the use of such State, Territory, political subdivision, or the District of Columbia, then a tax upon the net income from the operation of such public utility shall be levied, assessed, collected, and paid in the manner and at the rates prescribed in this title [chapter], but there shall be refunded to such State, Territory, political subdivision, or the District of Columbia (under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary), an amount which bears the same relation to the amount of the tax as the amount which (but for the imposition of the tax imposed by this title [chapter]) would have accrued directly to or for the use of such State, Territory, political subdivision, or the District of Columbia, bears to the amount of the net income from the operation of such public utility for such taxable year."

The plaintiff contends that any income which it received or was entitled to receive from or through its interest in the water front property was exempted from taxation under the Constitution; that although it paid no taxes it is the proper party to seek recovery of the taxes paid by the wharf company, and is entitled to bring action therefor.

The defendant contends (first) that plaintiff's suit is based upon a payment of taxes, is in fact an action to recover taxes, and that the plaintiff having paid no taxes is not the proper party to bring an action to recover the taxes involved and has no right to bring a suit on account of the alleged wrongful payment of taxes; (second) that even if plaintiff is a proper party to bring the suit, it has not complied with the statutory requirements for bringing suits to recover taxes; (third) that under the facts in this case, the income involved was not ex-

empted under the Constitution and plaintiff did not acquire any rights under section 213 (b) (7) of the Revenue Act of 1924, which provides for refunding the taxes upon income derived from any public utility or the exercise of any essential governmental function under certain conditions.

These defenses to some extent overlap. The question of whether one who is not a taxpayer can bring a suit to recover taxes is involved in both the first and the last of these matters.

■ We can find no ground upon which the plaintiff is entitled to maintain a suit against the government on account of taxes paid by the wharf company for the years prior to 1924. The suit is essentially one to recover taxes. The amounts which the government received were assessed as taxes and collected as taxes. The plaintiff paid the government nothing either in taxes or otherwise. If we consider plaintiff's suit so far as these years are concerned to be an action to recover taxes, it is plain that the statutes which control such actions and fix the conditions under which recovery may be had will not permit the suit to be successfully maintained. The suit was not commenced by a party authorized by the statute to file a claim for refund and to bring suit against the government thereon. Moreover, the Board of Tax Appeals had decided in effect that the taxes were legally assessed and collected.

Conceding for the purposes of the argument that the taxes were levied in violation of the Constitution it would not affect this rule. Bankers' Reserve Life Co. v. United States, 44 F.(2d) 1000, 71 Ct. Cl. 279.

In the case last cited the plaintiff took an appeal to the Board of Tax Appeals from the decision of the Commissioner with reference to the taxes in controversy. On this appeal the decision of the Commissioner was confirmed by the Board. Subsequently in another case, the Supreme Court held that the particular tax involved was unconstitutional, and the plaintiff then brought suit in the Court of Claims to recover the taxes for that reason. This court held that the unconstitutionality of the act did not prevent the decision of the Board of Tax Appeals from becoming final and the recovery of the tax was barred thereby.

■ If, on the other hand, we regard plaintiff's suit for the years prior to 1924 as not being one to recover taxes paid, we must then consider whether any other basis can be found for it. Such an action can only be maintained when the government is withholding from a claimant money which should be paid to it by virtue of some statute, or some right or title which the claimant has thereto. But no such condition exists in this case. Prior to 1924, the Revenue Acts did not provide for any payments to be made to plaintiff out of the sums collected in taxes or from any other source. Plaintiff had no right or title to the money which was paid to the defendant as taxes, nor did the wharf company hold any of it in trust for the plaintiff. The fact, if it be a fact, that the wharf company paid to the government certain amounts in the way of taxes and that if it had not been so paid the plaintiff would have received a greater sum in its transactions with the wharf company does not give rise to any contract express or implied on the part of the government to pay to plaintiff any part of the money so collected. Here again we can say that if we concede for the purposes of the argument that the taxes in question were levied and collected in violation of the Constitution this fact would not affect the rule laid down above. If the wharf company paid the government taxes illegally assessed, this would be no defense on the part of the wharf company if it were sued by the city to recover the amount to which it was entitled under the existing arrangements and the laws applicable thereto. In other words, if the wharf company paid the city less than the contract or arrangement between the parties required, this would furnish a basis for suit by plaintiff against the wharf company but not against the government.

■ If our conclusions stated above are correct, it is immaterial whether a tax could be lawfully laid upon all of the income derived from the operation of the wharf without exempting in some way the income resulting from the use of plaintiff's interest in the property. While we think the wharf as operated was a public utility, it does not necessarily follow that the income therefrom was exempt. The state had the power to enter upon such an enterprise and it may be that it was to the advantage of the public to have what otherwise would be a street operated as a wharf. But this,

as was said in Helvering v. Powers, 293 U. S. 214, 55 S. Ct. 171, 173, 79 L. Ed. ——, does not establish immunity. As was said in the opinion in the last-named case:

"The state cannot withdraw sources of revenue from the federal taxing power by engaging in businesses which constitute a departure from usual governmental functions and to which, by reason of their nature, the federal taxing power would normally extend."

We do not think the fact that the property of the city was used in producing the income taxed alters the situation. The operation of a public wharf is not, in our opinion, a governmental function. For this reason with others, we hold that if the city recovers at all, it must recover under the special provisions of the 1924 statute.

In determining whether the plaintiff can recover from the defendant anything on account of the taxes paid for the year 1924 and subsequent years, we are confronted with two questions:

First. Whether the special provisions of the 1924 act are applicable to the facts in the case.

Second. If the special provisions of the act of 1924 are held to apply, then whether, under the special provisions of the 1924 act, plaintiff is entitled to receive anything more out of the last installment of taxes for 1924 and the taxes paid for subsequent years than was paid by the Commissioner.

■ Taking up these questions in their order, it will be observed that under the 1924 act it was not necessary for a municipality which had contracted for the operation of a utility to show that it had paid any taxes in order to be entitled to recover on account of its owning either partially or entirely the property which was being operated as a utility. On the contrary, it was sufficient if it appeared that taxes imposed under its provisions and paid had been collected out of proceeds from the operation of the utility under a contract with the municipality, in which event the latter might become entitled to a refund in whole or in part of the taxes so paid depending upon the extent of its ownership. This provision was undoubtedly enacted to enable a party who is not a taxpayer to bring suit for the amount it had lost by reason of taxes being assessed and collected on an income which was exempt, thereby decreasing the amount of income which the municipality should have received. We think

the government had the right to provide for the method of collecting and refunding the taxes provided in the 1924 act. In other words, the act was constitutional. It is for the government to say what shall be the method of collecting its taxes and even if the plan be somewhat devious that does not make it unconstitutional if the results are constitutional. This follows regardless of whether the income taxed is exempt and makes it unnecessary to pass on that question provided the municipality had entered into a contract to operate a utility and the tax was paid out of the proceeds of the operation thereof, and we think the facts of the case bring it within the statutory provisions for the following reasons:

It is true the evidence does not show that there was any contract in the strict sense of the term between the plaintiff and the wharf company for the purpose of operating a public utility, but that was the effect of the arrangement between the two. The evidence is such that it is manifest that both parties contemplated the operation of the property as a public wharf and we think the wharf company was under obligation so to do. When the wharf was so operated under agreements with the city, we think it was a public utility. If we are correct in this, it follows that the special provisions of the act of 1924 are applicable. The next question to be determined is whether the city is entitled under these provisions to receive anything more than it has already been paid.

■ If we are correct in concluding that the special provisions of the 1924 act are applicable to the instant case, there is another feature which is of much importance. After providing in such cases that the tax shall be levied upon all of the net income from the operation of the public utility, it is further provided that a proportionate part of the tax, measured by the relation which the interest of the taxpayer in the property bears to the whole amount thereof, shall be refunded to the municipality. There are no other requisites and no other contingencies. The provisions of the law are mandatory, and it is conceded on the part of the defendant that the requirements with reference to the refund of taxes to a taxpayer have no application here. It is immaterial that proceedings were taken with reference to some of these taxes before the Board of Tax Appeals and immaterial as to whether any applications for refund were filed. The statute is some-

what indefinite as to when the refund becomes due and payable, and we shall consider this question hereinafter, but when it became due we are clear that no demand was required to enable plaintiff to bring suit and the statute of limitations commenced to run. Carlisle v. United States, 29 Ct. Cl. 414; Curtis v. United States, 34 Ct. Cl. 1. Plaintiff contends that there was no liability on the part of the government until a demand was made and in support of this claim cites United States v. Taylor, 104 U. S. 216, 26 L. Ed. 721, United States v. Cooper, 120 U. S. 124, 7 S. Ct. 459, 30 L. Ed. 606, and United States v. Wardwell, 172 U. S. 48, 19 S. Ct. 86, 43 L. Ed. 360, but in our opinion these decisions have no application. In the first two cases, money was deposited in the treasury in such a way that the government became a quasi trustee for the party entitled thereto and under the terms of the statute the money could be held indefinitely as long as no demand was made for it. In the Wardwell Case, supra, the relation of the parties was compared to that of a bank with its depositors, the obligation of the bank being merely to pay when demand was made. A very different situation exists in the case at bar.

■ Having determined that the special provisions of the 1924 act are applicable, we are next required to determine whether thereunder the plaintiff is entitled to be paid any further sum than it has received from the defendant. The Commissioner made no refund upon the first three installments of taxes paid under the 1924 act and it is urged that no portion thereof can be recovered for the reason that these payments were made more than six years prior to the time when this suit was begun. But we do not think this fact determines when the statute of limitations began to run. The statute provides for the refund of the amount which "would have accrued" to the city if the tax had not been imposed. It appears to us that before it can be determined how much would have accrued to the city, there must first be determined the "amount of the tax" which by the statute is required to be used as a basis for computing the amount of the refund. In the case before us, the amount of the tax for 1924 was not finally determined until the Board of Tax Appeals rendered its decision, which was on December 31, 1931, and consequently the action is not barred as to these installments upon which the Commissioner made no refund. As to them, the only ques-

tion is the amount of plaintiff's recovery. This brings us to the next question in the case which is as to whether the Commissioner properly determined the proportionate share of the tax which should be paid to the plaintiff.

■ The payments which the Commissioner made were computed on the basis of 6222/26266ths. The plaintiff contends that as it had a one-third interest in the property used as a utility there should have been refunded to it one-third of the tax paid, and this, as we view it, is the principal issue in the case.

The statute is peculiarly drawn. It does not state that the proportion of the tax to be paid to the municipality shall be directly in proportion to its interest in the property, but that an amount should be paid which bears the same relation to the amount of the tax as the amount "which (but for the imposition of the tax imposed by this title [chapter]) would have accrued directly to or for the use of such * * * political subdivision * * * bears to the amount of the net income from the operation of such public utility. * * *"

It is evident that the real question here is whether the statute required a refund of one-third of the tax to the city. The arrangement or contract between the city and the wharf company was not such that if the tax had been omitted the company was obliged to pay one-third of the net income from the utility to the city. In the language of the statute, this amount would not "have accrued" to the city if the tax had not been levied. Under the arrangement with the city the wharf company paid the city its share of the profits in the form of dividends upon the amount of stock which it held. The record does not show whether all of the net profits were distributed, but if they had been the plaintiff would have received only such a proportion thereof as the number of shares which it owned bore to the whole number of shares of stock of the company which was operating the utility. If the taxes had been proportionately reduced on account of plaintiff's one-third interest in the property, the additional amount which plaintiff would have received by reason of the reduction would have been computed in accordance with the same fraction which the Commissioner used in making refund of taxes. No other payment would have been due or accrued under its arrangements with the wharf company. We need not consider any addition that

might have been made to the undivided profits in the treasury, because plaintiff's interest as a stockholder therein would be the same. In making his computation of the amount due the plaintiff, the Commissioner used the same fraction that was used by the wharf company in calculating the amount due the plaintiff as a dividend. We think that this action was in accordance with the statute.

At this point the plaintiff sets up again the contention that the income from the property was exempt from taxation to the extent of one-third thereof and that, regardless of the special provisions of the 1924 act, it is entitled to have one-third of the tax refunded to it. We do not think it is necessary to determine whether one-third of the net amount received from the operation of the wharf was exempt. If we disregard the special provisions of the 1924 act, we come back to the same question that is discussed in the first part of the opinion, namely, whether under the provisions of the law the plaintiff can recover anything on account of taxes paid by another party. We can find no provision in the law under which one against whom no taxes have been assessed and from whom no taxes have been collected can recover any part of taxes paid by another. Nor do we think there is anything in the circumstances of this case that takes it out of this general rule. As we have shown above, the plaintiff had no title to the money or fund paid to the government by the wharf company, nor was it held in trust for plaintiff; and there was no contract with the government, express or implied, to refund any part of these taxes except in accordance with the special provisions of the act of 1924. It is said that this leaves the plaintiff without any remedy, but the defect in this claim, as we see it, is that plaintiff is seeking a remedy for a loss caused by a situation not brought about by the government, but rather by the plaintiff itself through the arrangements it had with the wharf company. If plaintiff had directly leased its property to the wharf company, stipulating that it should receive as rent one-third of the profits received from its operation, there would have been no loss under any theory. The government would have been liable for a full one-third of the taxes collected under the special provisions of the act of 1924 and presumably would have paid that amount. The plaintiff, however, as a result of legislative action, decisions of the courts, and its own implied agreement was left in such a situation that it could receive only about one-fourth of the net profits arising from the operation of the wharf. We do not think this makes the government responsible for the amount of loss which plaintiff has sustained in this way. In short, the loss which it has sustained appears to be caused by matters over which the government has no control.

It follows from what has been stated above that plaintiff is not entitled to recover anything except for the shortage which exists by reason of no refund being made on the first three installments for the year 1924. The findings show that the Commissioner refunded to plaintiff not only the plaintiff's proportionate share of the last payment but also its proportionate share of the amount of the deficiency and interest paid by plaintiff for that year. The amount of plaintiff's recovery therefore is 6222/26266ths of the total of the first three payments made which is $22,259.49. Computed in this way the plaintiff is entitled to recover $5,272.92. But this amount did not become due to plaintiff until the final payment on the tax had been made which was on November 26, 1932, and consequently will draw interest only from that date. Judgment will be rendered accordingly.