## CITY OF BURLINGTON, IOWA, v. UNITED STATES.
### No. 12954.

Circuit Court of Appeals, Eighth Circuit.
May 1, 1945.

888

J. C. Pryor, of Burlington, Iowa (John Hale and Fred S. Holsteen, both of Burlington, Iowa, on the brief), for appellant.

Louise Foster, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, A. F. Prescott, and Paul R. Russell, Sp. Assts. to Atty. Gen., Maurice F. Donegan, U. S. Atty., of Davenport, Iowa, and William R. Sheridan, Asst. U. S. Atty., of Keokuk, Iowa, on the brief), for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

This is an appeal by the City of Burlington, Iowa, from the judgment of the District Court in favor of the United States denying refund of alleged over-payments for 1930 to 1936, inclusive, of federal income taxes paid by the Citizens Water Company of Burlington, Iowa. The claim of the City is that such taxes were levied and collected on the proportionate amount of revenue for each of said taxable years belonging to the City and exempt as being taxes on a state agency, and by virtue of the provisions of Title 26, U.S.C.A. Int. Rev.Code, § 116(d) (1).

The facts in this case have been stipulated. It appears that the Citizens Water Company was incorporated in 1902 for the purpose of acquiring, operating, improving and extending the existing system of water works in the City of Burlington, Iowa, and was granted a 20 year exclusive franchise by the City. In 1922 the corporate charter was renewed and extended for twenty years. The company was capitalized for $330,000, consisting of $150,000 of common stock and $180,000 of preferred stock on which dividends were fixed at six percent and five percent, respectively. Both the common and preferred shares had a par value of $100. During the years in controversy the City owned 500 shares of the company's common stock and it also owned 532 shares (537 shares during the latter years) of preferred stock upon which it received its regular dividends for each of the years in question.

The company's income tax liability for 1930 to 1936, inclusive, was determined and assessed by the Commissioner of Internal Revenue and paid by the company in respect of its entire net income. The company resisted the Commissioner's determination, claiming that its income was the income of the City and therefore exempt, and this question was litigated, the decision sustaining the Commissioner. Citizens Water Co. v. Commissioner of Internal Revenue, 32 B.T.A. 750, affirmed, 8 Cir., 87 F.2d 874, certiorari denied, 302 U.S. 694, 58 S.Ct. 13, 82 L.Ed. 536. After filing claims for refund the City of Burlington instituted the present action under the provisions of Section 116(d) (1) of the Internal Revenue Code, and urging that all of the taxes paid by the taxpayer for each year should be refunded to the City with the exception of payments made in respect of that part of the income paid out as dividends to private stockholders. The government's answer and amended answer placed in issue the asserted right of the City to recover upon the grounds assigned,

---

and also challenged the right of recovery for the years 1930 to 1931, on the further ground that the suit as to the income for those years was not timely. In argument on the appeal, appellant conceded the action was not timely as to the years 1930 and 1931, and the claim as to those years was abandoned.

■ Appellant contends the trial court was in error in its conclusion of law "that the annual net revenues of the Citizens Water Company and the water fund were not the property nor the earnings of, in whole or in part, the City of Burlington, but were the property and earnings of the Citizens Water Company, a private corporation, and no such earnings in any taxable year accrued directly to the City of Burlington, Iowa."

The contract between the City and the company[1] gave the City the appointment of two of the five directors, and these two City appointed directors had a veto on all expenditures of the company in excess of $1,000, except current expenses or emergencies; it provided that a "water fund" should be established out of the proceeds of a five-mill levy by the City upon all real and personal property located in a prescribed water district, in conjunction with the earnings of the company; it specified cumulative dividends at six percent on common stock and five percent on preferred stock, and no more; it provided that the company should furnish all water to the City for public purposes free; it gave the City the right to acquire full ownership of the system of water works upon assuming all duties and liabilities of the company and repaying to the stockholders par for all the then outstanding capital stock; it provided that in the event of final distribution among the stockholders, the two classes of stock should share pro-rata per share; it provided that interest upon the company's bonds should be a preferred claim on that part of the "water fund" raised by taxation; and that next there should be paid from the water fund the current expenses of the company, including repairs and taxes on the water works or the stock held by the stockholders; it provided no unreasonable expenses should ever be incurred by the company, nor salaries paid except to specified persons; it further provided that after paying the above amounts and dividends, "the surplus, after setting aside one thousand dollars for contingencies, may be used in making extensions and improvements of the water works, or in retiring five percent stock, or in creating a sinking fund, either, as the City may determine and direct."

It does not appear from this contract that the annual net revenues of the company and the "water fund" were the property or the earnings of the City, or that such earnings accrued directly to the City. The City received its regular dividends for each of the years involved unaffected by the tax in question. On final distribution the City could only share pro rata with the other stockholders in the assets of the company. The City's control over the company's expenditures, its right to direct the disposition of the surplus "water fund" in prescribed ways, and its right to acquire ownership of the company by assuming its liabilities and paying the other stockholders par value for their stock plus accumulated dividends, are not sufficient to constitute ownership of the water fund by the City, nor an accrual of the earnings of the company to the City. We agree with the trial court's conclusion.

■ Appellant contends that the tax was illegally imposed on the Company because it was an instrumentality of the City, performing an essential governmental function and the income taxed was the income of the City. This argument was the basis for the company's attack against the same tax in Citizens Water Company v. Commissioner, supra, wherein this court determined that the company was a taxable entity and not an exempt instrumentality of the City. While that former decision is not res adjudicata because the City was not there a party, its reasoning is persuasive in this case. Furthermore, since the appellant is not the taxpayer it cannot complain of the taxes, except by express statutory authority, as in Section 116(d) (1). City of Galveston v. United States, 81 Ct.Cl. 371, 10 F.Supp. 810; Id., D.C., 17 F.Suppp. 145, certiorari denied, 297 U.S. 712, 56 S.Ct. 589, 80 L.Ed. 998.

■ Thus the appellant must recover, if at all, under Section 116(d) (1). Section 116 provides:

"Exclusions from gross income

"In addition to the items specified in section 22(b), the following items shall not

---

[1] Also described in Citizens Water Co. v. Commissioner, supra.

be included in gross income and shall be exempt from taxation under this title:

\* \* \* \* \*

"(d) Income of states, municipalities, etc. Income derived from any public utility or the exercise of any essential governmental function and accruing to any State, Territory, or the District of Columbia, or any political subdivision of a State or Territory, or income accruing to the government of any possession of the United States, or any political subdivision thereof.

"Whenever any State, Territory, or the District of Columbia, or any political subdivision of a State or Territory, prior to September 8, 1916, entered in good faith into a contract with any person, the object and purpose of which is to acquire, construct, operate, or maintain a public utility—

"(1) If by the terms of such contract the tax imposed by this title is to be paid out of the proceeds from the operation of such public utility, prior to any division of such proceeds between the person and the State, Territory, political subdivision, or the District of Columbia, and if, but for the imposition of the tax imposed by this title, a part of such proceeds for the taxable year would accrue directly to or for the use of such State, Territory, political subdivision, or the District of Columbia, then a tax upon the net income from the operation of such public utility shall be levied, assessed, collected, and paid in the manner and at the rates prescribed in this title, but there shall be refunded to such State, Territory, political subdivision, or the District of Columbia (under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary) an amount which bears the same relation to the amount of the tax as the amount which (but for the imposition of the tax imposed by this title) would have accrued directly to or for the use of such State, Territory, political subdivision, or the District of Columbia, bears to the amount of the net income from the operation of such public utility for such taxable year.

"(2) If by the terms of such contract no part of the proceeds from the operation of the public utility for the taxable year would, irrespective of the tax imposed by this title, accrue directly to or for the use of such State, Territory, political subdivision, or the District of Columbia, then the tax upon the net income of such person from the operation of such public utility shall be levied, assessed, collected, and paid in the manner and at the rates prescribed in this title. \* \* \*"

This statute is applicable only if "a part of such proceeds for the taxable year would accrue directly to or for the use of" the City. Section 116(d) (1). Since, as has been determined, no earnings of the company (except dividends) accrued directly to or for the use of the City, it follows that this statute does not apply.

The City of Galveston case, supra, is distinguishable in that there the claim for refund under Section 116(d) (1) was based upon the accrual of income to the City from ownership of property and not merely stockholding. See Bear Gulch Water Co. v. Commissioner of Internal Revenue, 9 Cir., 116 F.2d 975, wherein the entire stock of the utility was owned by a state university and the court held that no income was received by the university, since although the university was sole stockholder, the corporation's income was not the university's income.

Affirmed.