GROUP NO. 1 OIL CORPORATION *v.* BASS, COLLECTOR OF INTERNAL REVENUE.

No. 425. Argued February 26, 1931.—Decided April 13, 1931.

*Messrs. Homer L. Bruce* and *James A. Baker* for petitioner.

*Solicitor General Thacher,* with whom *Assistant Attorney General Youngquist* and *Messrs. Sewall Key, Hayner N. Larson, Claude R. Branch,* and *John G. Remey,* Special Assistants to the Attorney General, *Erwin N. Griswold,* and *Clarence M. Charest,* General Counsel, and *Ottamar Hamele,* Special Attorney, Bureau of Internal Revenue, were on the brief, for respondent.

*Messrs. James V. Allred,* Attorney General of Texas, and *Fred Upchurch,* Assistant Attorney General, by special leave of Court, filed a brief on behalf of the State of Texas, as *amicus curiae.*

MR. JUSTICE STONE delivered the opinion of the Court.

Petitioner brought suit in the District Court for Western Texas to recover federal income taxes alleged to have been illegally exacted for its fiscal years 1925 to 1928, inclusive. It set up that in those years it received income derived from the sale of oil and gas produced under leases to it by the State of Texas; that these leases were instrumentalities of the State for the development of its public domain; and that petitioner's income derived from them was constitutionally immune from the tax as one imposed by the Federal Government on an instrumentality of the State. The District Court gave judgment for petitioner, 38 F. (2d) 680, which the Circuit Court of Appeals for the Fifth Circuit reversed, holding that the immunity, if any, had been waived by the State by § 27 of Chapter 83, Laws of 1917, which provided that rights acquired under leases, including the present ones, were to be " subject to taxation as is other property." 41 F. (2d) 483. This Court granted certiorari, 282 U. S. 830.

Petitioner's leases relate to parts of the public domain of the State, set apart by the legislature for the benefit of the state university, under a mandate of the State Constitution of 1876, Art. 7, §§ 10–15, inclusive. See Texas Laws, 1917, c. 83. In terms they "grant and lease" for a period of ten years, with renewal privileges, the right to enter on designated lands for the purpose of "drilling and operating" for petroleum and gas, and to erect and maintain all necessary structures for the production, transportation, and storage of petroleum and gas. The lessee or "owner of the rights . . . conveyed" is required to pay the State the value of one-eighth of the petroleum produced and of one-tenth of the gas sold. The challenged tax is measured by the net profits derived by petitioner from the sale of oil and gas produced, after making allowed deductions from gross receipts, including the royalties paid to the State.

Section 12 of Article 7 of the State Constitution, as interpreted by the highest court of the State, "requires the Legislature to dispose of the University lands by *sale* only." *Theisen* v. *Robison,* 117 Tex. 489, 502; 8 S. W. (2d) 646. Leases of university lands like those of petitioner have been held by that court to be in compliance with this provision of the Constitution as present sales to the lessees, upon execution of the leases, of the oil and gas in place. *Theisen* v. *Robison, supra.* In so construing them, the court applied the settled rule of the State with respect to oil and gas leases. *Texas Co.* v. *Daugherty,* 107 Tex. 226; 176 S. W. 717; *Stephens County* v. *Oil & Gas Co.,* 113 Tex. 160; 254 S. W. 290; cf. *Waggoner Estate* v. *Wichita County,* 273 U. S. 113. As was said in *Theisen* v. *Robison, supra,* pp. 510, 511:

"They [the leases] do not authorize the purchaser to take and use seven-eighths or any other mere fractional part of the oil or gas in the land leased. The purchaser instead buys *all* the oil and gas, for a stipulated price, part

of the price being measured by the value of a certain fraction of the *produced* oil and gas, which is a very different thing from the value of that fraction of the oil and gas in place. The leases convey all the oil and gas in granting the right to find, produce, and appropriate *all* of them, in consideration of the payment of stipulated sums and also the value of a stated fraction of the oil and gas produced."

Property sold or otherwise disposed of by the government, either state or national, in order to raise revenue for government purposes, is in a broad sense a government instrumentality, with respect to which neither the property itself before sale, nor its sale by one government, may be taxed by the other. But it does not follow that the same property in the hands of the buyer, or his use or enjoyment of it, or the income he derives from it, is also tax immune. *New Brunswick* v. *United States,* 276 U. S. 547; *Forbes* v. *Gracey,* 94 U. S. 762; *Tucker* v. *Ferguson,* 22 Wall. 527; see *Weston* v. *Charleston,* 2 Pet. 449, 468; *Veazie Bank* v. *Fenno,* 8 Wall. 533, 547. Theoretically, any tax imposed on the buyer with respect to the purchased property may have some effect on the price, and thus remotely and indirectly affect the selling government. We may assume that if the property is subject to tax after sale, the governmental seller will generally receive a less favorable price than if it were known in advance that the property in the hands of later owners, or even of the buyer alone, could not be taxed.

But the remote and indirect effects upon the one government of such a non-discriminatory tax by the other have never been considered adequate grounds for thus aiding the one at the expense of the taxing power of the other. See *Willcuts* v. *Bunn,* 282 U. S. 216, 231; *Educational Films Corp.* v. *Ward,* 282 U. S. 379; *Metcalf & Eddy* v. *Mitchell,* 269 U. S. 514, 523–524. This Court has consistently held that where property or any interest in it has

completely passed from the government to the purchaser, he can claim no immunity from taxation with respect to it, merely because it was once government-owned, or because the sale of it effected some government purpose. *New Brunswick* v. *United States, supra; Forbes* v. *Gracey, supra; Tucker* v. *Ferguson, supra;* see *Gromer* v. *Standard Dredging Co.,* 224 U. S. 362, 371; *Choctaw, O. & G. R. Co.* v. *Mackey,* 256 U. S. 531, 537; *Central Pacific R. Co.* v. *California,* 162 U. S. 91, 125; *Railroad Co.* v. *Peniston,* 18 Wall. 5, 35–37; *Weston* v. *Charleston, supra,* p. 468.

Property which has thus passed from either the national or a state government to private ownership becomes a part of the common mass of property and subject to its common burdens. Denial to either government of the power to tax it, or income derived from it, in order to insure some remote and indirect antecedent benefit to the other, would be an encroachment on the sovereign power to tax, not justified by the implied constitutional restriction. See *Weston* v. *Charleston, supra,* p. 468. The interest which passed to petitioner here, as defined by the laws of the State, is not distinguishable from the mining claims, acquired in lands of the United States under its statutes, which, together with minerals and ores derived from them, were held subject to state taxation in *Forbes* v. *Gracey, supra.*

True, since restricted, allotted, or tribal lands of Indians are instrumentalities of the Federal Government, it has been held that neither leases of the lands, *Indian Oil Co.* v. *Oklahoma,* 240 U. S. 522; nor gross income derived from them, *Choctaw, O. & G. R. Co.* v. *Harrison,* 235 U. S. 292; see *Howard* v. *Gipsy Oil Co.,* 247 U. S. 503; *Large Oil Co.* v. *Howard,* 248 U. S. 549; *Jaybird Mining Co.* v. *Weir,* 271 U. S. 609; nor net income, *Gillespie* v. *Oklahoma,* 257 U. S. 501, may be taxed by a State. But no case has extended such immunity to property, real or personal, or income derived from its sale, where it has

passed to the buyer by a completely executed act of sale, without restriction, and no interest in it has been retained for the benefit of the Indians. Whatever may be the appropriate limits of the immunity, as applied in this class of cases, those limits are clearly exceeded by that asserted here.                                     *Affirmed.*

MR. JUSTICE ROBERTS took no part in the consideration or decision of this case.