## BIG LAKE OIL CO. v. HEINER, Collector of Internal Revenue.

### No. 6159.

District Court, W. D. Pennsylvania.
Dec. 28, 1932.

John S. McKelvy, Jr., of Pittsburgh, Pa., and Baker, Botts, Andrews & Wharton and Homer L. Bruce, all of Houston, Tex., for plaintiff.

Louis E. Graham, U. S. Atty., and John A. McCann, Sp. Asst. to U. S. Atty., both of Pittsburgh, Pa., and Clarence M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Henry C. Clark, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

GIBSON, District Judge.

The Big Lake Oil Company has brought suit against the Collector of Internal Revenue to recover $1,565,875.84, with interest, which is alleged to have been erroneously assessed and collected as income taxes for the years 1924, 1925, 1926, and 1927. The parties have agreed upon the facts and the only question before us is whether or not the income of the plaintiff obtained from oil and gas leases in the state of Texas is subject to an income tax by the United States.

The stipulated facts in the instant case are identical with those appearing in Group No. 1 Oil Corporation v. Bass, Collector, 283 U. S. 279, 51 S. Ct. 432, 75 L. Ed. 1032. In that case, as in this, the state of Texas had

leased certain of its public lands to an oil company. The leases were on part of the public land of the state which had been set aside by it under its Constitution for the support of the University of Texas. It was held in the Group No. 1 Case that the profits derived by the lessee from the sale of oil and gas produced, after deducting the state's royalties, were not immune from federal taxation upon the ground that the leases were state instrumentalities. Despite the fact that the exact question before the court in that case was the same in all respects as that before us, it is urged upon this court that it should hold that the income derived by the lessees from said leases is not subject to federal taxation because the leases in question were state instrumentalities. Plaintiff bases its claim upon what it conceives to be a change of views in the majority of the court evidenced by the decision in Burnet v. Coronado Oil & Gas Co., 285 U. S. 393, 52 S. Ct. 443, 444, 76 L. Ed. 815. The latter case, so far as the facts were concerned, was exactly parallel with the facts in Group No. 1 Case, with the exception that the leases were upon public lands of the state of Oklahoma, which had been leased for the benefit of the public schools of that state. In the Oklahoma case the majority of the court held that the lease was an instrumentality of the state in the exercise of a strictly governmental function, and that the application of the federal income tax to the income derived from the lease by the lessee was therefore unconstitutional. In the Coronado Case decision the Supreme Court followed Gillespie v. Oklahoma, 257 U. S. 501, 42 S. Ct. 171, 66 L. Ed. 338, which was substantially identical with it in point of facts. The learned counsel for the plaintiff viewed this decision as a return to a principle which had been abandoned in the Group No. 1 Case. We should feel some delicacy in placing such an interpretation upon an opinion of the Supreme Court in the absence of any distinct statement to that effect by that court, even though we agreed with the interpretation, which we do not.

The Supreme Court in its opinion in the Group No. 1 Case based its decision upon varying views of the state courts of Texas and Oklahoma in respect to oil and gas leases of the nature of those under consideration. In Texas the state courts have held such leases as present sales to the lessees upon execution of the leases of the oil and gas in place. The courts of Oklahoma hold that such leases do not transfer to the lessee title to such oil and gas until it has been brought to the surface.

The learned justice who wrote the opinion in the Group No. 1 Case, and who, with other members of the court, dissented in the Coronado Case, in the latter case receded from the position taken in the opinion in the Group No. 1 Case, stating, in effect, that he was of opinion that the distinction so urged between Gillespie v. Oklahoma, supra, and Group No. 1 Case did not furnish a sound basis for the difference in results. In his opinion and in the opinion of several of his associates, it was the duty of the Supreme Court to overrule Gillespie v. Oklahoma. The majority of the court disagreed with his contention, reciting, however, "We are disposed to apply the doctrine of Gillespie v. Oklahoma strictly and only in circumstances closely analogous to those which it disclosed." The majority opinion, following its declaration as to its intention to circumscribe Gillespie v. Oklahoma, went on to discuss Group No. 1 decision without any criticism of it. In view of the nature of the dissenting opinion it seems plain to us that the majority intended to adhere to the Group No. 1 decision.

In Burnet v. Harmel, 53 S. Ct. 74, 77 L. Ed. ——, decided November 7, 1932, reversing decision of Court of Appeals, Harmel v. Commissioner of Internal Revenue, 56 F. (2d) 153, opinion by Mr. Justice Stone, Group No. 1 Oil Corporation v. Bass was discussed in such manner as to plainly indicate that it was regarded by the Supreme Court as being in full force and effect. We feel that we are controlled by it, and that judgment must be entered for the defendant.