## FULLILOVE et ux. v. UNITED STATES
### (two cases).
### Nos. 2407, 2408.

District Court, W. D. Louisiana, Shreveport Division.

Jan. 6, 1934.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, La., for plaintiffs.

Philip H. Mecom, U. S. Atty., of Shreveport, La., for the United States.

DAWKINS, District Judge.

Both of the above cases have been submitted upon exceptions of no cause of action. The plaintiffs seek to recover amounts paid as income taxes upon profits arising from the sale of real property to the city of Shreveport, which subsequently was donated to the government for an airport. They allege that because of the imminence of expropriation proceedings they agreed through arbitration upon the price, which was fixed by appraisal, "as just and adequate compensation," and the imposition of taxes upon the income or profit "from said transaction violate(s) the constitutional immunity from federal taxation of the states and their instrumentalities, means and operations for governmental purposes." In the alternative,

469

they charge the violation of the Fifth Amendment to the Federal Constitution, as well as similar provisions of the state Constitution (article 1, § 2), in that they have been denied just and adequate compensation for their property, taken for public purposes. Plaintiffs rely, among others, mainly upon the following cases: Burnet v. Coronado Oil & Gas Company, 285 U. S. 393, 52 S. Ct. 443, 76 L. Ed. 815; Gillespie v. Oklahoma, 257 U. S. 501, 42 S. Ct. 171, 66 L. Ed. 338; Indian Motocycle Company v. U. S., 283 U. S. 570, 51 S. Ct. 601, 75 L. Ed. 1277; and Panhandle Oil Company v. Mississippi, 277 U. S. 218, 48 S. Ct. 451, 72 L. Ed. 857, 56 A. L. R. 583.

In the first of these cases it was held that the income derived from mineral development of mineral leases with the state of Oklahoma upon lands donated to it by the federal government for school purposes, could not be subjected to state income taxes because the lease was an instrumentality of the state in the exercise of a strictly governmental function. The decision was by a bare majority, with vigorously dissenting opinions on the part of Justices Brandeis and Stone, in which Justices Roberts and Cardozo joined. A distinction was made in the majority opinion between that case and Group No. 1 Oil Corporation v. Bass, 283 U. S. 279, 51 S. Ct. 432, 75 L. Ed. 1032, in that under the law of Texas, where the latter arose, mineral leases constitute present sales to the lessee of the oil and gas in place, and income taxes levied upon the lessee's 7/8th, after the payment to the state of its 1/8th royalty, did not violate any constitutional provision. The dissenting opinions question the logic of this distinction in the Coronado Case, but there were no dissents in the Group No. 1 Oil Corporation decision.

Gillespie v. Oklahoma was in effect the same as the Coronado Case, except that the leases were upon restricted Creek and Osage Indian lands, and in both instances the conclusion was that the leases were instrumentalities used in performing a function of government. In Indian Motocycle Company v. United States, a federal tax of 5 per cent. was sought to be levied upon the sale of motorcycles to the police department of the city of Westfield, Mass. It was held that this had the effect of levying a tax upon an instrumentality of the government of the city, in violation of constitutional provisions prohibiting one government from taxing such agencies of the other. And in Panhandle Oil Company v. Mississippi, a tax upon gasoline sold to the Coast Guard Service and a Vet-

erans' Hospital, was for the same reason held invalid. In the latter case, Justices Holmes, McReynolds, Brandeis, and Stone dissented.

If carried to the extent contended here, and the Coronado, Gillespie, Indian Motorcycle Company, and Panhandle Oil Company Cases are followed in future, especially the latter two, then under present conditions in which the federal government, the states, and their subdivisions are furnishing a large part of the commercial business of the country through the Civil Works, Public Works, etc., Administrations, an enormous amount of business will escape both federal and state income taxes, as well as other taxes. However, viewing these cases in their most extreme light, I do not believe I am justified in holding that the profit from a single transaction of this nature, between a state or its subdivisions, and private persons, can be said to fall within the doctrine. In the mineral rights cases, the property belonged to the state or was under the control and supervision of the government and was being developed for their benefit, and in the motorcycle and gasoline cases, the taxes necessarily had to be paid by the city or government, as they would have been added to the price of the sale under the very provisions of the taxing laws; while in the present case, whether the price of the land was agreed upon or fixed in expropriation proceedings, it would inescapably represent the figure which the city would have to pay for it. The profit made by the landowner would be no different to any other which he might have earned in so far as income taxes are concerned. Instead of his property being taken without just compensation where a fair value was paid, either by agreement or through expropriation, because of the tax, he would really gain an advantage in such circumstances if not required to pay it; because if he sold to a private individual, or a corporation with the powers of eminent domain expropriated it, he would undoubtedly have to pay the tax on the profit. I am not unmindful of the contention that if the landowner had known he would be compelled to pay the income tax upon the profit made from the sale of his property, he might have exacted a price sufficient to take care of it, or that the court and jury, in expropriation proceedings, would take that circumstance into consideration in fixing its value. However, such a position in an expropriation proceeding would necessarily involve going into the landowner's whole financial status to determine the amount of income taxes that might be levied upon this profit, including such conditions and range

470

of investigation of collateral matters that no court, in my opinion, would or could properly allow it, for the reason that the amount of the tax might be large or small, dependent, not upon the real value of the property, but upon the financial status and consequent tax liability of the owner.

My conclusion is that the exception of no cause of action should be sustained.

Proper decree should be presented.