STANDARD INVESTMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79847. Promulgated June 17, 1937.

*W. E. Baird, C. P. A.*, for the petitioner.
*Clay C. Holmes, Esq.*, for the respondent.

#### OPINION.

HILL: This is a proceeding for the redetermination of a deficiency in petitioner's income tax liability for the year 1932 in the amount of $1,103.32. The sole issue is whether interest received by petitioner on special tax bills issued by the municipalities of Kansas City and St. Louis, Missouri, in payment for public improvements, is subject to Federal income tax. The facts were stipulated by the parties.

Petitioner is a Missouri corporation, and for the calendar year 1932 duly filed its income tax return with the collector of internal revenue at Kansas City.

In connection with its authorized activities, petitioner has from time to time purchased various kinds of securities, including special

tax bills issued by the cities of Kansas City and St. Louis, Missouri. During the calendar year 1932 petitioner received interest on special tax bills as follows:

| | |
|---|---|
| Kansas City special tax bill interest | $17, 840. 91 |
| St. Louis special tax bill interest | 1, 116. 87 |
| Total | 18, 957. 78 |

In preparing its Federal income tax return for the year 1932, petitioner did not include the above amount of $18,957.78 in its gross income, but reported it as nontaxable interest received on obligations of a state, or political subdivision thereof. Respondent included the amount of the special tax bills interest in petitioner's taxable income in the amount of $18,957.78, and allowed as a deduction interest paid in the amount of $10,933.65, which latter amount had previously been disallowed as interest paid to carry tax-free securities.

Kansas City is an incorporated city operating under a charter adopted February 24, 1925, effective during the taxable year, pursuant to provisions of the Constitution of Missouri. St. Louis is an incorporated city, operating under a special charter adopted August 29, 1914, and in effect during the taxable year.

The Kansas City and St. Louis special tax bills held by petitioner, from which the interest in controversy arose, were for paving and sewer improvements issued by those cities in conformance with the provisions of their respective charters.

Petitioner contends that the interest in controversy is exempt from Federal income tax (1) under section 22 (b) (4), Revenue Act of 1932, and (2) under "the Constitutional limitation which prevents the federal government from imposing a tax which might burden or handicap the instrumentalities of such cities."

Section 22 (b), Revenue Act of 1932, provides:

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this title:

\* \* \* \* \* \* \*

(4) TAX-FREE INTEREST.—Interest upon (A) the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia. \* \* \*

Under the quoted statute, exemption of the interest received on special tax bills here involved depends upon whether they constituted "obligations" of political subdivisions of the State of Missouri. That Kansas City and St. Louis are such political subdivisions is not, of course, questioned, but, on the facts presented, we think the special tax bills were not "obligations" of those cities within the meaning of that term as used in the statute.

Pursuant to charter authorization, tax bills were issued in part payment for paving and sewer improvements, under contracts to

## 158

which the respective cities were parties, but the charter of each city provided that it should not be liable thereon. These tax bills had no security back of them other than liens against the specific tracts of land benefited by the improvements, and payment could not be enforced except by foreclosure of the liens. They were payable to the contractors named therein, and, after issuance by the cities to the contractors in payment of the contractual liability of the cities, the latter had no further liability to the contractors or subsequent holders.

These facts establish, in our opinion, that the special tax bills did not constitute "obligations" of the cities issuing them, either within the statutory or the commonly understood meaning of that term. They were not in form or substance obligations of the cities; in fact, after issuance the cities had no further interest in or obligation in connection with such tax bills, other than the keeping of routine records.

The Kansas City charter provided for the issuance of special tax bills to the contractor, who, if he was to be paid in cash, endorsed the tax bills to the city, or the tax bills might be issued directly to the city. And the city was authorized to sell tax bills owned or held by it without recourse at any time, for an amount not less than face value. The general procedure for financing public improvements constructed by the city of St. Louis was substantially the same as for Kansas City. It seems evident, therefore, that where the city paid its contractual obligations by issuing the special tax bills directly to the contractor, it in effect sold its tax liens on the benefited properties, and thereafter had no further interest in the matter. The taxability of interest subsequently paid by the property owners to the contractor or purchaser of the tax bills in no wise involves an "obligation" of the city.

Neither property owned by a political subdivision of a state, nor income therefrom while so owned, is subject to tax by the Federal Government, but when the property is sold to a third person the income thereafter derived is none the less subject to the Federal income tax even though the property which produced it was formerly owned by such political subdivision and was sold by it to, raise revenue for governmental purposes. This principle is well stated in the opinion of the Supreme Court in *Group No. 1 Oil Corporation* v. *Bass*, 283 U. S. 279, from which the following extract is quoted:

Property sold or otherwise disposed of by the government, either state or national, in order to raise revenue for government purposes, is in a broad sense a government instrumentality, with respect to which neither the property itself before sale, nor its sale by one government, may be taxed by the other. But it does not follow that the same property in the hands of the

buyer, or his use or enjoyment of it, or the income he receives from it, is also tax immune. *City of New Brunswick* v. *United States*, 276 U. S. 547, * * * *Forbes* v. *Gracey*, 94 U. S. 762, * * * *Tucker* v. *Ferguson*, 22 Wall. 527. * * *

In the case at bar Kansas City and St. Louis "sold or otherwise disposed of" the tax liens represented by the special tax bills. They were property, worth in money their face value. After issuance or assignment, the cities had no further interest therein, and in no respect had any liability thereunder. The St. Louis charter, in section 1 of Article XXIII provided that "the City shall not be liable in any manner for any work or improvement to be paid for in special tax bills." The Kansas City charter, in section 273, contained substantially similar provisions. The tax bills were issued to the respective contractors in payment of the contractual obligations of the cities, and they were in turn sold by the contractors to the petitioner, who is here claiming exemption from Federal income tax on the interest received by it from the land owners. Since the tax bills clearly were not "obligations" of the cities, the interest is not exempt under the provisions of section 22 (b) (4) of the Revenue Act of 1932, *supra*.

The proceeding before us is clearly distinguishable from *Michael Pontarelli*, 35 B. T. A. 872, and *Carey-Reed Co.*, 36 B. T. A. 36. The latter cases involved interest on bonds issued by cities for street and sewer improvements and while the interest was payable solely out of collections of improvement taxes assessed against the benefited property, it was none the less interest on obligations of political subdivisions of the respective states, and so specifically exempt from tax under section 22 (b) (4) of the Revenue Acts of 1928 and 1932.

Petitioner here further urges in the alternative that the interest received by it on the tax bills is exempt under the constitutional limitation prohibiting the Federal Government from imposing a tax "which will be a burden or work a hardship on the instrumentality of the state or political subdivision." This contention, we think, can not be sustained.

The tax resisted here by petitioner obviously is not laid *directly* upon an obligation or instrumentality of the cities in question, but it is argued that to sustain the tax would be to impose *indirectly* a burden upon the power of those cities to finance the construction of public improvements. All taxes levied either by the Federal Government or the states, may affect remotely and to some extent the instrumentalities of the other. But, to come within the implied constitutional restriction, the burden must be one that is "necessary, immediate and direct", and not inconsequential and remote. *Trinity Farm*

*Construction Co.* v. *Grosjean*, 291 U. S. 466. In *Willcuts* v. *Bunn*, 282 U. S. 216, the Court said:

It must be remembered that we are dealing, not with any express constitutional restriction, but only with an asserted implication. The constitutional provisions authorizing the Congress to lay taxes * * * are certainly broad enough to cover the tax in question, and before we can restrict their application upon the ground of a burden cast upon the State's borrowing power, where the tax is not laid upon the contracts made by the State in the exercise of that power, or upon the amounts payable thereunder, but is laid upon distinct transactions by private owners, it must clearly appear that a substantial burden upon the borrowing power of the State would actually be imposed.

The *Bunn* case involved the question whether, under the constitutional restriction of the taxing power of the Federal Government, profits derived by the taxpayer from the sale of Minnesota municipal bonds were subject to the Federal income tax. In connection with the quoted extract from the Court's opinion, it was held that they were. In the present case, as in the cited decision, the tax was not "laid upon the contracts made by the State" in the exercise of its borrowing power "or upon the amounts payable thereunder." No amount, either principal or interest, due on the special tax bills was payable by Kansas City or St. Louis. The payment and receipt of interest constituted a transaction between third persons, after the cities issuing the tax bills had ceased to be concerned therewith.

It may be within the realm of possibility that the proposed tax would cast some burden upon the cities referred to. If it had been definitely known that the interest on the tax bills would not be subject to the Federal income tax, it is conceivable that such tax bills might have been sold to better advantage. However, we think such burden is too remote and speculative to justify exemption of the interest from Federal taxation. In *Group No. 1 Oil Corporation* v. *Bass, supra*, the Court pointed out that:

Theoretically, any tax imposed on the buyer with respect to the purchased property may have some effect on the price, and thus remotely and indirectly affect the selling government. We may assume that, if the property is subject to tax after sale, the governmental seller will generally receive a less favorable price than if it were known in advance that the property in the hands of later owners, or even of the buyer alone, could not be taxed.

But the remote and indirect effects upon the one government of such a nondiscriminatory tax by the other have never been considered adequate grounds for thus aiding the one at the expense of the taxing power of the other.

Respondent's determination of the deficiency herein is approved.

*Judgment will be entered for the respondent.*