UNEMPLOYMENT COMPENSATION COMMISSION OF NORTH CAROLINA v. WACHOVIA BANK & TRUST COMPANY.

(Filed 3 May, 1939.)

1. **Taxation § 19—Constitutionally authorized activities of Federal Government are necessarily governmental in nature and exempt from taxation.**

Since our State Constitution is a limitation of powers and therefore the General Assembly may authorize the State or political subdivisions to engage in activities not strictly governmental in nature unless prohibited by express provision of, or necessary implication from, the State Constitution, all activities of the State or its political subdivisions are not necessarily exempt from taxation by the Federal Government; but since the Federal Constitution is a grant of powers and Congress may exercise only the express and implied powers therein granted, all activities of the Federal Government, or agencies selected or created by it, constitutionally authorized by Congress, are necessarily governmental in nature and therefore exempt from taxation by the State.

**2. Same—**

Whether an agency is an instrumentality of the Federal Government so as to be exempt from taxation by the State will be determined in each case as it arises.

**3. Same—Ordinarily, privately owned agency created for profit under State law is not an instrumentality of Federal Government.**

Ordinarily, any agency created and wholly owned by the Federal Government for the convenient prosecution of its governmental functions, and existing at the will of the Government, is an instrumentality of the Government; while privately owned corporations or associations organized primarily for profit and created by the State are not instrumentalities of the Government, notwithstanding they may have been granted incidental duties or privileges by the Federal Government to promote some governmental policy.

**4. Same—Elements for consideration for determining whether agency is instrumentality of government entitled to tax exemption by the State.**

In the determination of whether an agency is an instrumentality of the Federal Government so as to be exempt from taxation by State, whether it was created by the Federal Government, wholly owned by it, primarily engaged in the performance of some essential governmental function, whether it is created for profit, and whether the proposed tax will impose an economic burden upon the Government, are all elements to be considered, and while no one of these factors alone may be sufficient and the presence of all is not required for immunity, if the proposed tax places an economic burden upon the Government or if it constitutes an undue interference of the agency in the performance of the governmental functions, the agency may usually be classed as a governmental instrumentality.

**5. Master and Servant § 59—Bank chartered by the State is liable for Unemployment Compensation taxes even though it is a member of the Federal Reserve System.**

A bank organized under the laws of this State is not an instrumentality of the Federal Government so as to exempt it from the tax imposed by the Unemployment Compensation Act, notwithstanding that the bank may be a member of the Federal Reserve System, since its existence and powers are derived from its State charter and its membership in the Federal Reserve System is voluntary and may be relinquished by it without destroying its corporate existence.

**6. Master and Servant § 56: Courts § 9—Interpretation of the North Carolina Unemployment Compensation Act is a matter for our State courts.**

Our State Unemployment Compensation Act was passed pursuant to a plan national in scope, and therefore serious consideration is to be given to the construction placed upon similar language of the Federal statute by the Commissioner of Internal Revenue, but the interpretation of the act is finally for our courts, and neither the ruling of the Commissioner nor that of the State Unemployment Compensation Commission is conclusive.

**7. Appeal and Error § 29—**

A contention not discussed in appellant's brief will be deemed abandoned.

**8. Taxation § 19: Master and Servant § 59—**

A State bank which is a member of the Federal Reserve System is not exempt from taxation under the Unemployment Compensation Act because of its connection with the Federal Deposit Insurance Corporation nor may it claim such exemption because the tax would discriminate against it in favor of national member banks, since to relieve it from such taxation would discriminate in favor of it against nonmember State banks.

**9. Master and Servant § 59: Taxation § 8b—Taxes levied for year 1936 under Unemployment Compensation Act held void as contravening Art. I, sec. 32.**

Since the State Unemployment Compensation Act, ch. 1, Public Laws of 1936, is in effect a tax upon an act or acts, and since the statute was not ratified until 16 December, 1936, and the determination of "employment" within the coverage of the act must be determined from records for the calendar year 1936, and since no benefits therefrom could be obtained by employees for the calendar year 1936, in so far as the act attempts to require the payment of contributions for the calendar year 1936, it is retroactive and void as being in conflict with Art. I, sec. 32, of the State Constitution.

DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Harris, J.,* at October Civil Term, 1938, of WAKE. Modified and affirmed.

This is a civil action instituted against the defendant, an employer, to recover $19,421.84, alleged to be due for the years 1936 and 1937, under ch. 1, Public Laws 1936 (Extra Session), as amended, known as the Unemployment Compensation Law.

The defendant is a member of the Federal Reserve Bank System and of the Federal Deposit Insurance Corporation. It admits that if it is liable under said act the amount due is as stated in the complaint, to wit: $6,287.33, with interest, for 1936, and $13,134.51, with interest, for 1937. However, it pleads immunity under the provisions of section 19 (7) (b), which provides that the term "employment" shall not include: "Services performed in the employ of . . . the United States Government or of an instrumentality . . . of the United States," and denies liability by reason thereof.

A jury trial having been waived, the court below found the facts, made its conclusions of law, and rendered judgment for the plaintiff. The defendant excepted and appealed.

*Adrian J. Newton, Ralph Moody, and J. C. B. Ehringhaus, Jr., for plaintiff, appellee.*

*Manly, Hendren & Womble and W. P. Sandridge for defendant, appellant.*

BARNHILL, J.   It is conceded, and the court found as a fact, that the defendant is a private banking corporation, organized and doing business for profit under the laws of the State of North Carolina, and that it is a member of the Federal Reserve System and the Federal Deposit Insurance Corporation.   Likewise, the defendant offered evidence tending to show, and the court found as a fact, that the United States Treasury Department, through the Bureau of Internal Revenue, promulgated a ruling now in force that State banks which are members of the Federal Reserve System, and their employees, are exempt from the taxes imposed pursuant to Titles VIII and IX of the Social Security Act.

The ruling of the United States Treasury Department relates to the taxes levied by the Federal Government under the Act of Congress known as the Social Security Act.   We are not concerned therewith except to the extent that the same may be persuasive in the determination of the question presented to us, which is: Is the defendant a private banking institution organized under the law of North Carolina and operating for profit, an instrumentality of the Federal Government within the meaning of the provisions of the North Carolina Unemployment Compensation Law by reason of its membership in the Federal Reserve Bank system and the Federal Deposit Insurance Corporation?

In determining whether any given corporation, association or individual is an instrumentality of government a somewhat different rule applies as between instrumentalities of a State Government and instrumentalities of the Federal Government.   The State Legislature may exercise any power of legislation which is not expressly or by necessary inference prohibited by the Constitution, unless such legislation invades the prerogatives of one of the other coördinate branches of government. It may, therefore, authorize the State or one of its subdivisions to engage in an enterprise which is not essentially governmental in nature.   Therefore, in applying the constitutional immunity of instrumentalities of a State Government from Federal taxation the United States Supreme Court has consistently held that when the instrumentality of the State is engaged in performing functions which are not essentially governmental in nature the immunity does not apply.   The right of the State to maintain instrumentalities of government free of inhibition by the national taxing power of "the high and responsible duties assigned to them in the Constitution. . . . And, more especially, those means and instrumentalities which are the creation of their sovereign and reserved rights," relates to functions thought to be essential to the maintenance of a State Government.   Thus, where the attempt was to tax: Income received from the investments of a municipal subdivision of a state, *U. S. v. Baltimore & O. R. Co.,* 17 Wall., 322, 21 L. Ed., 597; income received by a private investor from state bonds, and thus to

threaten impairment of the borrowing power of the State, *Pollock v. Farmers' Loan & Trust Co.,* 157 U. S., 429, 39 L. Ed., 759; Railroad of U. S. held in name of corporation, *Clallam County v. U. S.,* 263 U. S., 341, 68 L. Ed., 328; or the manufacture and sale to a municipal corporation of equipment for its police force, *Indian Motorcycle Co. v. U. S.,* 283 U. S., 570, 75 L. Ed., 1277, it was held that the doctrine of constitutional immunity applied. On the other hand, a state conducted liquor business, *S. C. v. U. S.,* 199 U. S., 437, 50 L. Ed., 261, a street railway business taken over and operated by state officers as a means of effecting a local public policy; *Helvering v. Powers,* 293 U. S., 214, 79 L. Ed., 291; the privilege of exercising corporate franchises granted by a state to public service companies, *Flint v. Stone Tracy Co.,* 220 U. S., 107, 157, 55 L. Ed., 389, income or profits derived by independent engineering contractors from a contract with the state under which they performed certain state functions, *Metcalf v. Mitchell,* 269 U. S., 517, 70 L. Ed., 384; profits from the resale of state bonds, *Willcuts v. Bunn,* 282 U. S., 216, 75 L. Ed., 304; lessees of state property engaged in producing oil from state lands, the royalties from which, payable to the state, are devoted to public purposes; *Group No. 1 Oil Corp. v. Bass,* 283 U. S., 279, 75 L. Ed., 1032, are not exempt from taxation under the immunity doctrine. These are only a few of the cases in which the Supreme Court of the United States has refused to extend the doctrine. See also *Unemployment Compensation Commission v. Insurance Co., ante,* 479, for an able discussion of the subject. 1 Selected Essays on Constitutional Law, p. 641, "State Taxation and the New Federal Instrumentalities."

As to the Federal Government, it derives its authority wholly from the powers delegated to it by the Constitution. Since every action within its constitutional power is governmental action, and since Congress is made the sole judge of what powers within the constitutional grant are to be exercised, all activities of government constitutionally authorized by Congress are governmental in nature. And when the National Government lawfully acts through a corporation which it owns and controls, those activities are governmental functions entitled to whatever tax immunity attaches to those functions when carried on by the Government itself through its departments. *Graves v. New York ex rel. O'Keefe,* filed 27 March, 1939. The Federal Government is one of delegated powers, in the exercise of which Congress is supreme; so that every agency which Congress can constitutionally create is a governmental instrumentality. If, therefore, the defendant can be classed as such an agency engaged in the exercise of functions of the Federal Government it is immune from taxation by the State.

Perhaps it is impossible to formulate a satisfactory definition of the term "instrumentalities of government" which would be applicable in all cases. At least it is unwise to undertake to do so. Each case must be determined as it arises. Generally speaking, however, it may be said that any commission, bureau, corporation or other organization, public in nature, created and wholly owned by the Government for the convenient prosecution of its governmental functions, existing at the will of its creator, is an instrumentality of government; and that any state created corporation or association, privately owned, and organized and doing business primarily for profit, which is granted certain incidental duties or privileges by the Federal Government is not. The enjoyment of a privilege conferred by either a national or a state government upon an individual, association or corporation operating primarily for profit in a private enterprise, even though to promote some governmental policy, does not convert such individual, partnership or corporation into an instrumentality of government. *Unemployment Compensation Commission v. Insurance Co., ante,* 479. Speaking to this subject in *Thomson v. Union Pacific Railroad Co.,* 19 U. S. Law Ed., 792, the Supreme Court, in respect to a Kansas corporation which had received large grants of land and engaged large subsidies from the Federal Government on the security of a second mortgage on the condition of paying at maturity the bonds advanced by way of subsidy and of rendering certain services to the Government in the transmission of messages and in the transportation of mails, troops, munitions and other property at reasonable rates of compensation, said that: "The Corporation, however, remained a State Corporation, though entitled to certain benefits and subject to certain duties under the legislation of Congress. . . . We do not think ourselves warranted, therefore, in extending the exemption established by the case of *McCulloch v. Maryland,* beyond its terms. We cannot apply it to the case of a corporation deriving its existence from state law, exercising its franchise under state law, and holding its property within state jurisdiction and under state protection."

In the borderline cases in which it does not clearly appear that the agency is or is not an instrumentality of government important factors, among others, which must be considered in determining that such agency is an instrument of government are: (1) It was created by the Government; (2) it is wholly owned by the Government; (3) it is not operated for profit; (4) it is primarily engaged in the performance of some essential governmental function; (5) the proposed tax will impose an economic burden upon the Government, or it serves to materially impair the usefulness or efficiency of the agency or to materially restrict it in the performance of its duties. While, perhaps, no one of these factors is sufficient, and the presence of all is not required, to constitute any given

agency an instrumentality of government, the presence or absence of either requires serious consideration. If the tax in fact is to be paid out of Government money, thus placing an economic burden on the Government, or, if it constitutes an undue interference with the agency in the performance of its governmental functions, the agency may usually be classed as a governmental instrumentality.

Bearing these principles in mind, we must consider the relationship of the defendant to the Federal Reserve Banks and to the Federal Government to determine the justness of its claim to immunity as an instrumentality of government. In the first place, the Act of Congress creating Federal Reserve Banks expressly exempts them and their capital stock and surplus and the income derived therefrom from Federal, State and local taxation, except taxes upon real estate. Title XII, U. S. C. A., sec. 531. While the act authorizes the defendant and other State banks to become members of the Federal Reserve System no such tax exemption is extended to them. The silence of The Congress in this respect is significant.

The defendant is a corporation organized under the laws of the State of North Carolina, exercising only such powers as are granted in its charter, or by the general law of the State. In acquiring stock in and becoming a member of the Federal Reserve System it was exercising a power expressly conferred upon it by the State. Ch. 4, sec. 42, Public Laws 1921. While National Banks are required to become members of the Federal Reserve System or forfeit their charters, the defendant acquired membership therein by its own voluntary act. Title XII, U. S. C. A., sec. 321. It may at any time voluntarily surrender its membership. Title XII, U. S. C. A., sec. 328. It retains its full charter and statutory rights as a State Bank with authority to exercise all the corporate powers granted by the State. Title XII, U. S. C. A., sec. 330.

In becoming a member of the Federal Reserve System the defendant assumed certain duties and obligations. It was required to subscribe to capital stock in the Federal Reserve Bank of its district. It must permit examination by Federal Bank examiners. It must submit reports and financial statements, and it must otherwise comply with the rules and regulations included in the statute and adopted by the Board of Governors of the Federal Reserve System. In assuming these obligations it did so in the exercise of a power expressly conferred by State statute. Ch. 4, sec. 42, Public Laws 1921. Furthermore, it did so voluntarily for its own advantage to obtain the benefits accruing from membership in the system. The performance of these duties is merely incidental. The continuance—or cancellation—of its membership in the Federal Reserve System does not affect its corporate existence. It

remains a private banking institution operated for the benefit of its stockholders. The tax to be paid comes out of its earnings and is an expense of its operation. The payment thereof to no extent imposes any economic burden upon the Federal Government. The levy thereof in no wise tends to interfere with the defendant in the exercise of the privileges and in the performance of the obligations and duties which rest upon it as a member of the Federal Reserve System.

The provisions for the payment of unemployment compensation is a national plan and contemplates a coöperative legislative effort by State and National Governments for carrying out a public purpose common to both, which neither could fully achieve without the coöperation of the other. The Unemployment Compensation Acts adopted in the several states were substantially contemporaneous. They were adopted pursuant to and in accord with the Social Security Act of the Federal Government. Therefore, in interpreting our act serious consideration is to be given to the construction placed upon the Federal statute by the administrative agency charged with its execution. *U. S. v. Hernanos,* 209 U. S., 338, 52 L. Ed., 821; *Komada v. United States,* 213 U. S., 392; *Powell v. Maxwell,* 210 N. C., 211, 186 S. E., 326; *City of Winston-Salem v. Board of Education,* 163 N. C., 404, 79 S. E., 886. However, this State reserves its sovereign right, through its courts, to interpret and apply its own legislation. We cannot conceive that the ruling of the Commissioner of Internal Revenue, exempting the defendant from the payment of tax under the Social Security Act, is based on sound reason or logic. While we fully appreciate the high purposes of the national plan and concur in the desire of this State to coöperate therein, we are unable in this instance to follow or to adopt the ruling of the Commissioner of Internal Revenue in his interpretation of language in the Social Security Act which is similar to that contained in our act. Nor is the fact that the North Carolina Unemployment Compensation Commission for a time likewise interpreted the language in the North Carolina Act, while persuasive, conclusive upon us.

We are of the opinion that there are no facts appearing from the evidence or in the facts found by the court which would justify the conclusion that the defendant is an instrumentality of the Federal Government such as would exempt it from the payment of the tax the plaintiff seeks to collect. The immunity is granted because it serves the public, and not a private cause. It is not in aid of the individual, association, or corporation in whose favor the exemption is claimed.

The defendant likewise claimed immunity by reason of its membership in the Federal Deposit Insurance Corporation. In its brief it does not state this as one of the questions presented and it does not argue the proposition. This position is deemed to be abandoned. In any

event, under the Federal law the defendant by reason of its membership in the Federal Reserve System was automatically insured under the Federal Deposit Insurance Corporation Act, without application. 12 U. S. C. A., sec. 264 (a) (e). For a consideration paid, or to be paid, its depositors are insured under the act. There is nothing in the relationship of the defendant to this Federal Corporation which would cause us to alter our conclusion. In this connection the defendant frankly admits in its brief that Treasury Ruling S. S. T. 79 is to the effect that a bank is not entitled to exemption under the Social Security Act merely by reason of having its deposits insured by the Federal Deposit Insurance Corporation, and that it does not claim exemption by reason of this fact alone.

It is argued here that to deny the defendant immunity from taxation under the State statute would operate to discriminate in favor of National member banks and against State member banks for the reason that neither National member banks nor State member banks pay the Federal tax and that National member banks do not pay the State tax levied under the State act. Thus, the State member banks would be carrying the burden of a tax not imposed upon National banks. It is true that this is the result under the present ruling of the United States Commissioner of Internal Revenue. On the other hand, to grant the immunity sought by the defendant would work a discrimination in favor of the defendant as against nonmember State banks. If we were forced to base our decision upon the selection of the lesser of these two evils which result from the ruling of the Commissioner of Internal Revenue, with which we do not concur, we would choose that horn of the dilemma which would work equality as between all State banks.

Article I, sec. 32, of the North Carolina Constitution, provides in part, that: "No law taxing retrospectively sales, purchases or other acts previously done ought to be passed." The North Carolina Unemployment Compensation Law, ch. 1, Public Laws 1936 (Extra Session), was ratified 16 December, 1936. It undertakes to levy a tax for the year 1936 for the promotion of the purposes of the act by providing: "On and after January one, one thousand nine hundred and thirty-six, contributions shall accrue and become payable by each employer for each calendar year in which he is subject to this act, with respect to wages payable for employment (as defined in section nineteen [g]) occurring during such calendar year. Such contributions shall become due and be paid by each employer to the commission for the fund in accordance with such regulation as the commission may prescribe, and shall not be deducted, in whole or in part, from the remuneration of individuals in his employ." The act further provides that for the year 1936 the contributions shall equal nine-tenths of one per centum of wages pay-

able by the employer with respect to employment during said year. Is so much of the act as attempts to levy a tax or require contributions for the year 1936 retroactive in nature and violative of Article I, sec. 32, of the Constitution?

In part, the purpose of the act is declared to be to provide "for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." The act repeatedly refers to "employment," "employed," and "unemployed." The "contributions" required begin to accrue on the first day of the year "for employment occurring during such calendar year." The contributions are "with respect to wages payable for employment." Benefits are payable to those who are "temporarily" unemployed. The employer is termed an "employing unit."

It is not required that the employing unit shall be an employer for the full current year in order to be liable for the tax assessed. It is an employing unit if it has had in its employ on or subsequent to 1 January, 1936, one or more individuals performing services for it within this State. "Any employing unit which in each of twenty different weeks within either the current or the preceding calendar year (whether or not such weeks are or were consecutive) has, or had, in employment eight or more individuals (not necessarily simultaneously and irrespective of whether the same individuals are or were employed in each such week)" is an employer subject to the tax. Sec. 19 (f) (1). Thus, it appears that to be classed as an employer for the year 1936, subject to the tax, it is not necessary that such employing unit should have had in its employ eight or more individuals in each of twenty different weeks of 1936. It is sufficient if it employed eight individuals in each of twenty different weeks *within the preceding calendar year,* if it continues to be the employer of one or more persons during 1936. To determine the status of an employing unit, in ascertaining whether it is liable for the tax, the commission is empowered to examine its status as an employer not only during 1936 but during 1935 as well.

One of the primary purposes of the act is to give relief against involuntary unemployment, to prevent its spread and to lighten its burden. The law was not ratified until 16 December, 1936. There could be no determination of the liability for the tax, the amount, or the due date thereof until after the commission provided for in the act was appointed and qualified. There was no remaining time in 1936, after the enactment of the statute and the appointment and qualification of the commission, within which any person could establish the status of an employer under the standards set out in the act. The commission was required to consider the operations of alleged employers during the period prior to the enactment of the law, extending back even into 1935.

Furthermore, such unemployment as occurred during the year 1936, for which the contributions were to be made, had already occurred. The unemployed could not, under the requirements of the statute, qualify to receive compensation for their involuntary unemployment during that year. In so far as 1936 is concerned, the contributions are required for a purpose impossible to be accomplished. The "burden which now so often falls with crushing force upon the unemployed worker and his family" had already been met by those involuntarily unemployed, and there was no possibility of relief under the act, even though contributions for that year are required.

It seems clear to us that the contributions in the nature of a tax required by the law under consideration are based upon the act of contracting for employment and the payment of wages for services rendered. This is the theme of the whole act in respect to the collection of contributions. We are of the opinion, therefore, that the requirement that employers make contributions "in respect to employment" is in effect a tax upon an act or acts. If it be considered a tax upon the maintenance of the status of an employer, even then it is essentially a tax upon an act. To maintain the status of an employer one must employ and pay wages. In so far as the act attempts to require the payment of contributions "in respect to employment" for the year 1936 it is retroactive and is in direct conflict with the provisions of Article I, sec. 32, of the Constitution and is void.

The judgment below is
Modified and affirmed.

DEVIN, J., took no part in the consideration or decision of this case.